J-S20020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARCUS ANTONIO CARDER, | |
| Appellant | No. 984 WDA 2014 |

Appeal from the Judgment of Sentence May 14, 2014
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0002048-2013

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARCUS CARDER, | |
| Appellant | No. 1047 WDA 2014 |

Appeal from the Judgment of Sentence May 14, 2014
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000110-2014

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and WECHT, JJ.

MEMORANDUM BY **SHOGAN, J.:**　　　　　　　**FILED:  MAY 1, 2015**

In these consolidated cases, Appellant, Marcus Antonio Carder, appeals from the judgments of sentence entered following his convictions of burglary and criminal trespass at lower court docket number 0002048-2013,

and his conviction of criminal mischief at lower court docket number 0000110-2014. We affirm.

The trial court set forth the factual and procedural history of the case at docket number 0002048-2013 as follows:

> On March 13, 2014 a jury found [A]ppellant guilty of burglary (Count 1) and criminal trespass (Count 5). The jury was deadlocked on theft and robbery charges (Counts 2 and 4). A charge of receiving stolen property was withdrawn (Count 3). On May 14, 2014, this Court sentenced [Appellant] to serve a period of confinement of 72 to 144 months at Count 1 and a concurrent 16 to 32 month sentence at Count 5.

> At trial, Ms. Zimeng Ren testified that on the date of the incident, she was a student at Gannon University in Erie, Pennsylvania. Ms. Ren, a native of China, was 22 years old at the time. She lived in a small apartment located at 902 Myrtle Street in the City of Erie. The apartment consisted of three rooms including the bathroom. She had one chair in the kitchen. As English is not her first language, most of her associates were Chinese classmates. She knew few Americans. She had a very limited social life. Generally, she stayed at home, or occasionally ate at restaurants. She did not usually go out alone. Trial Transcript, Day One, at 16 - 22.

> On May 9, 2013, at approximately 4:30 a.m., she was awakened when she heard a noise. She saw [A]ppellant standing in her bedroom at the foot of the bed. She became extremely frightened and offered [A]ppellant cash if he would not hurt her. (She felt that if she spoke to him, it might keep him from harming her.) [A]ppellant inquired how much money she had and whether she had a wallet. She indicated that the wallet was in the first drawer of her desk. However, when she checked it was not there. It had contained credit and other cards, over one hundred dollars in cash, her passport sheets and passwords for her various accounts. Included was her PNC bank card. She told [Appellant] that she had approximately three thousand dollars in her checking account, but needed twenty-four hundred dollars for tuition. In order to avoid any harm, she wrote a check payable to [A]ppellant for six hundred dollars. [A]ppellant spelled his name for her as she wrote out the check.

- 2 -

During the encounter she asked [Appellant] if he had a gun, he said "No", said that he was strong and that he didn't need it. To demonstrate his strength [Appellant] lifted her up. [Appellant] started to pull down his pants to show her that he did not have a weapon. She asked him not to do so. He complied. [A]ppellant remained at the premises for approximately two hours before he left. *Id*. at 24 - 51.

Regarding the point of entry, there are three windows in the apartment. One kitchen window had a broken lock and had been open five to six inches to ventilate the apartment. It is located very close to the kitchen door and it is possible to reach the inside of the door from that window. *Id*. at 55 - 57; Trial Transcript, Day Two at 28 - 29.

Ms. Ren reported the incident to the Gannon Police Department. Erie Police Detectives Kenneth Kensill and Dennis Soborsky testified. During the course of the investigation the police obtained [A]ppellant's picture and prepared a photo lineup which was shown to Ms. Ren. She identified [A]ppellant immediately. *Id*. at 35 - 36. She also provided a consistent statement with respect to the events.

The defense presented testimony of a number of witnesses, including [A]ppellant. Some of those witnesses attempted unsuccessfully to place the alleged victim with [A]ppellant prior [to] the event. However, there was no credible evidence that she knew him. [A]ppellant went so far as to indicate that [Appellant and Ms. Ren] had an intimate relationship.

The sentence imposed on May 14, 2014 was in the aggravated range of the sentencing guidelines for the reasons set forth on the record.

On May 27, 2014, [A]ppellant filed a motion to modify sentence and a post-trial motion. The former challenged the discretionary aspects of sentence; the latter was a motion in arrest of judgment and request for a new trial. On May 27, 2014, the motions were denied by this Court.

Trial Court Opinion, 8/7/14, at 1-3 (footnote omitted).

The trial court set forth the factual and procedural history of the case at docket number 110-2014 as follows:

[A]ppellant was charged with one count of criminal mischief as a misdemeanor of the second degree arising out of an incident that occurred on August 29, 2013. On May 12, 2014, after a one-day jury trial, [Appellant] was found guilty. On May 14, 2014, he was sentenced by this Court to serve a period of incarceration of 12 to 24 months.[1]

[1] On that same day [A]ppellant was sentenced on an unrelated charge at Docket 2048 - 2013. That case is also on appeal.

At trial, Monica Carrol, an employee of the Erie County Prison testified for the Commonwealth. She serves as the Inmate Service Coordinator of the prison and monitors the use of the law library. Trial Transcript at 16 - 17. She explained the process that inmates use with respect to that aspect of their confinement. *Id*. at 18 - 20. She is quite familiar with [A]ppellant and knew that he was incarcerated in July and August of 2013. He used the law library on a weekly basis, as well as her notary services. She was also familiar with his handwriting which is quite distinctive. *Id*. at 21 - 22.

On or about August 28, 2013, she received an anonymous tip that [A]ppellant was damaging prison law books by tearing [pages] out of them (see Commonwealth's Exhibit 1).[2] Specifically, it was alleged that [A]ppellant was tearing pages out of the books. *Id*. at 23 - 24. She relayed this information to Captain Seymour who made a copy of the note.

[2] The exhibit designation is to the trial exhibits.

Ms. Carrol pulled [A]ppellant's library requests for the prior two weeks and examined the books that he had requested. She found that there were pages missing. She passed this information onto [sic] Captain Seymour. *Id*. at 25 - 27. On August 29, 2013, prison officials conducted a search of [A]ppellant's cell. Various papers were seized, including pages from the books which had been examined by Ms. Carrol.

Sergeants John Kendziora and Michael Kudlak testified for the Commonwealth concerning the search of [A]ppellant's cell. *Id*. at 62 - 74 (Kendziora), 90 - 91 (Kudlak). Kudlak also testified concerning [A]ppellant's habits while incarcerated. *Id*. at 86 - 89. At the time of the search, [A]ppellant was confronted with the pages that had been torn from the books and was told by Sergeant Kudlak that he would be charged. [A]ppellant's response was: "I don't give a fuck". *Id*. at 92. Exhibits corroborated [A]ppellant's access to the books as well as the damage. See Commonwealth's Exhibits 2A - 2E. Ms. Carrol testified that the damages rendered the books unusable and expressed an opinion that the amount of the loss was $4,695.46. *Id*. at 37 - 41. On May 27, 2014, [A]ppellant filed a motion for post-sentence relief which was denied the same day. This appeal followed.

Trial Court Opinion, 7/30/14, at 1-2.

As previously indicated, on May 14, 2014, the trial court sentenced Appellant to serve a term of incarceration of seventy-two to 144 months for his conviction of burglary and a concurrent term of incarceration of sixteen to thirty-two months for the conviction of criminal trespass. Also on May 14, 2014, the trial court sentenced Appellant to serve a consecutive term of incarceration of twelve to twenty-four months for his conviction of criminal mischief. Appellant filed timely post-sentence motions in both matters on May 27, 2014, which the trial court denied by orders dated that same day.[1]

_____

[1] We note Appellant needed to file his post-sentence motions on or before Tuesday, May 27, 2014, because May 24, 2014 was a Saturday, and Monday, May 26, 2014 was the Memorial Day holiday. *See* 1 Pa.C.S. § 1908 (stating that, for computations of time, whenever the last day of any such period shall fall on Saturday or Sunday, or a legal holiday, such day shall be omitted from the computation).

Appellant then filed the instant timely appeals, which have been consolidated.

Appellant presents the following issues for our review:

The verdict in the burglary case was against the weight of the evidence in that there was no evidence of forced entry and the only [sic] the verdict in this case was against the weight of the evidence in that the victim did not testify that the crime took place.[1]

> [1] The sufficiency of the evidence claim raised in [both Appellant's post-sentence motion and Pa.R.A.P. 1925(b) statement] is being dropped, as both sufficiency of the evidence and weight of the evidence cannot be argued simultaneously, since an argument regarding weight assumes that the evidence was sufficient.

The conviction for criminal mischief was not based on sufficient evidence, as the Commonwealth's chief witness testified that she did not know who ripped the pages from the books[.]

The sentences in this case were manifestly excessive and clearly unreasonable when the court sentenced him in the aggravated range without providing sufficient reasons for the sentence on the record and when the sentences were run consecutively[.]

Appellant's Brief at unnumbered pages 2-3 (full capitalization omitted).

Appellant first argues that the verdict for his conviction of burglary was against the weight of the evidence. Specifically, Appellant contends that his version of events, *i.e.*, that he was personally involved with the victim and therefore entered her home with consent, was more credible than the victim's version of events.

In **Commonwealth v. Clay**, 64 A.3d 1049 (Pa. 2013), our Supreme

Court set forth the following standards to be employed in addressing

challenges to the weight of the evidence:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 560 Pa. 308, 319, 744 A.2d 745, 751-52 (2000); **Commonwealth v. Brown**, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 560 A.2d at 319-20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Id**. at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Brown**, 538 Pa. at 435, 648 A.2d at 1189.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

>> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of

the evidence and that a new trial should be granted in the interest of justice.

*Widmer*, 560 Pa. at 321-22, 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Widmer*, 560 A.2d at 322, 744 A.2d at 753 (quoting *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 447, 625 A.2d 1181, 1184-85 (1993)).

*Clay*, 64 A.3d at 1054-1055. "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-880 (Pa. 2008).

Our review of the record reflects that the trial court addressed each of Appellant's challenges to the weight of the evidence and determined that they lack merit. Specifically, the trial court stated the following with regard to Appellant's challenge to the weight of the evidence supporting his conviction of burglary:

There is no question that the Commonwealth's case was based primarily upon the testimony of [Ms.] Zimeng Ren. However, her testimony was credible and clearly established [A]ppellant's culpability.

In order to establish the offense of burglary, the Commonwealth was required to show that [A]ppellant entered her apartment without Ms. Ren's permission with the intent to commit a crime. See 18 P[a].C.S.A. §3502 (a)(1). Ms. Ren's testimony, as well as the police investigation, indicated that [A]ppellant unlawfully entered her apartment, more than likely by unlatching the inside kitchen door and committed the offense of theft. Furthermore, the victim's testimony established the elements of criminal trespass as it proved that [A]ppellant entered into the apartment without permission. See 18 Pa.C.S.A. §3503 (a)(1)(i). In addition to Ms. Ren's trial testimony, the Commonwealth also introduced evidence that she picked [A]ppellant's photo from the photo identification lineup. Her testimony standing alone, if believed by the jury, was sufficient to establish [A]ppellant's guilt beyond a reasonable doubt. *See Commonwealth v. Wilder*, 393 A.2d 927, 928 (Pa. Super. 1978). (A positive identification by one witness is sufficient to sustain a conviction.) Moreover, the jury's verdict does not shock one's conscience. Therefore, this Court did not err when it denied [A]ppellant's motion in arrest of judgment and for a new trial.

Trial Court Opinion, 8/7/14, at 5.

The jury, sitting as the finder of fact, was free to believe all, part, or none of the evidence against Appellant, as was its right. The jury weighed the evidence and concluded Appellant perpetrated the crimes of burglary and criminal trespass. This determination is not so contrary to the evidence so as to shock one's sense of justice. We decline Appellant's invitation to assume the role of fact finder and to reweigh the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in determining

- 9 -

Appellant's weight of the evidence claim, in this regard, lacked merit. Thus, this claim fails to provide Appellant relief.

In his second issue, Appellant argues that there was insufficient evidence to support his conviction of criminal mischief. Basically, Appellant contends that the Commonwealth failed to establish that he was the person who actually damaged the books from the law library.

When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Duncan*, 932 A.2d 226, 231 (Pa. Super. 2007) (citation omitted). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id*. (quoting *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa. Super. 2005)). However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. *Id*. In addition, this Court may not substitute its judgment for that of the fact finder, and where the record contains support for the convictions, they may not be disturbed. *Id*. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented. *Commonwealth v. Hartle*, 894 A.2d 800, 804 (Pa. Super. 2006).

Criminal mischief is defined, in relevant part, as follows:

## § 3304. Criminal Mischief

(a) Offense Defined. -- A person is guilty of criminal mischief if he:

* * *

      (5) intentionally damages real or personal property of another …

18 Pa.C.S. § 3304(a)(5).

The trial court offered the following analysis with regard to Appellant's challenge to the sufficiency of the evidence to support the conviction of criminal mischief:

> Here, the Commonwealth was bound to prove beyond a reasonable doubt that [A]ppellant intentionally damaged real or personal property of another. See 18 Pa.C.S.A. § 3304(a)(5). It established through the testimony of its witnesses that the books belonged to the Erie County Prison, [A]ppellant had access to them, they were damaged and that [A]ppellant was found in possession of pages taken from the books. It also established the monetary value of the damage. Therefore, both the direct and circumstantial evidence established [A]ppellant's guilt beyond a reasonable doubt. Accordingly, the jury's verdict was supported by more than ample evidence. Therefore, this Court did not err when it denied [A]ppellant's motion for judgment of acquittal.

Trial Court Opinion, 7/30/14, at 4.

Our review of the record reflects that the Commonwealth presented evidence from the librarian of the law library that Appellant used the law library on a weekly basis, and books requested by Appellant had been damaged due to pages missing, which rendered the books unusable. In

addition, the Commonwealth presented evidence that a search of Appellant's cell revealed the missing pages from various damaged law books. This evidence presented at trial, although circumstantial, was sufficient to prove that Appellant intentionally damaged the personal property of another. Indeed, the jury, sitting as the finder of fact, was free to believe all, part, or none of the evidence presented. Hence, we affirm Appellant's conviction of criminal mischief.

In his third issue, Appellant argues that the trial court abused its discretion in imposing the sentences in these cases. It is well settled that there is no absolute right to appeal the discretionary aspects of a sentence. *Hartle*, 894 A.2d at 805. Rather, an appellant's appeal should be considered to be a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 162 (Pa. Super. 2007).

As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id*. at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. 2006)).

Whether a particular issue constitutes a substantial question about the appropriateness of a sentence is a question to be evaluated on a case-by-case basis. *Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001). As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. *Id*. "A substantial question will be found where the defendant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." *Commonwealth v. Ventura*, 975 A.2d 1128, 1133 (Pa. Super. 2009) (citations omitted).

Herein, the first three requirements of the four-part test are met; Appellant brought an appropriate appeal, raised the challenge in his post-sentence motion, and included in his appellate brief the necessary separate concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Therefore, we will next determine whether Appellant has raised a substantial question requiring us to review the discretionary aspects of the sentence imposed by the trial court. In so doing, we cannot look beyond the statement of questions presented and the

prefatory 2119(f) statement to determine whether a substantial question exists. ***Commonwealth v. Provenzano***, 50 A.3d 148, 154 (Pa. Super. 2012) (citing ***Commonwealth v. Jones***, 629 A.2d 133 (Pa. Super. 1993)).

Specifically, in his Pa.R.A.P. 2119(f) statement, Appellant claims that the sentencing court abused its discretion in imposing a manifestly excessive sentence that was not individualized. Appellant's Brief at unnumbered page 10. We have held that a claim that the trial court abused its discretion in imposing a manifestly excessive sentencing that was not individualized raises a substantial question. ***See Commonwealth v. Simmons***, 56 A.3d 1280, 1286 (Pa. Super. 2012) (finding a substantial question in the defendant's claim that his sentence was manifestly excessive because the trial court failed to issue an individualized sentence). In addition, Appellant claims that the sentencing court failed to set forth adequate grounds for imposing a sentence within the aggravated range of the sentencing guidelines. Appellant's Brief at unnumbered page 11. Likewise, we have held that a claim that the sentencing court imposed a sentence in the aggravated range without placing adequate reasons on the record raises a substantial question. ***Commonwealth v. Bromley***, 862 A.2d 598, 604 (Pa. Super. 2004) (citing ***Commonwealth v. Brown***, 741 A.2d 726 (Pa. Super.

1999)). Accordingly, because Appellant has stated substantial questions, we will consider his discretionary aspects of sentencing challenges on appeal.[2]

We reiterate that sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006). In this context, an abuse of discretion is not shown merely by an error in judgment. *Id*. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Id*. Appellate review with respect to a sentence within the guidelines is whether the sentence is "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2).

Indeed, the sentencing judge has broad discretion in determining the proper penalty, and this Court accords the sentencing court great deference, as it is the sentencing court that is in the best position to view the defendant's character, displays of remorse, defiance, or indifference and the

_____

[2] We note that within the argument section of Appellant's brief, he contends that the sentencing court imposed a manifestly excessive sentence when the sentences were run consecutively. Appellant's Brief at unnumbered pages 13, 17. However, this issue is waived due to Appellant's failure to specifically include the claim in his Pa.R.A.P. 2119(f) statement. *Provenzano*, 50 A.3d at 154. *See also Commonwealth v. Burton*, 770 A.2d 771, 785 (Pa. Super. 2001) (declining to review claim that sentencing court used incorrect prior record score, where issue was presented in argument portion of the appellant's brief but omitted from Pa.R.A.P. 2119(f) statement).

- 15 -

overall effect and nature of the crime. *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (quotations and citations omitted).[3] When imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). As we have stated, "a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id*.

_____

[3] The *Walls* Court instructed the following:

> In making this "unreasonableness" inquiry, the General Assembly has set forth four factors that an appellate court is to consider:
>
> (d) Review of the record.—In reviewing the record the appellate court shall have regard for:
>
>> (1) The nature of the circumstances of the offense and the history and characteristics of the defendant.
>>
>> (2) The opportunity of the sentencing court to observe the defendant, including any pre-sentence investigation.
>>
>> (3) The findings upon which the sentence was based.
>>
>> (4) The guidelines promulgated by the commission.
>
> 42 Pa.C.S. § 9781(d).

*Id*. at 963.

- 16 -

Essentially, Appellant contends that, even after counsel pointed out various mitigating factors, the sentencing court imposed unreasonable and excessive sentences in the aggravated range of the sentencing guidelines without providing sufficient reasons for the sentences imposed. Appellant's Brief at unnumbered pages 15-17.[4] For the reasons which follow, this claim lacks merit.

Our review of the record reflects that the sentencing court reviewed a presentence report, received letters from members of Appellant's family, heard from Appellant's attorneys regarding mitigating circumstances and a request that the sentences be imposed concurrently, heard Appellant challenge the trial court's subject matter jurisdiction, and listened to the Commonwealth's request for consecutive sentence. N.T., 5/14/14, at 5-13. Thereafter, the sentencing court made the following statement:

> THE COURT: All right, thank you. Well, I've considered a
> number of things here. The pre-sentence investigative report in

_____

[4] We observe that the argument section of Appellant's brief contains the following heading, which is followed by no pertinent argument:

> THE SENTENCES IN THIS CASE WERE MANIFESTLY EXCESSIVE
> AND CLEARLY UNREASONABLE WHEN THE COURT SENTENCED
> HIM IN THE AGGRAVATED RANGE WITHOUT PROVIDING
> SUFFICIENT REASONS FOR THE SENTENCE ON THE RECORD
> AND WHEN THE SENTENCES WERE RUN CONSECUTIVELY[.]

Appellant's Brief at unnumbered page 13. Because there is no argument pertaining to this heading, we conclude that the placement of the heading was a typographical error, and we consider that this heading more properly belongs on unnumbered page 15 of Appellant's brief.

its entirety, and I'm going to make it part of the record, the Pennsylvania Sentencing Code and all its factors, the guidelines as they apply to these cases. The letters that were submitted on behalf of and in support of [Appellant]. And I'm going to make those a part of the record and attach them to the pre-sentence report.

I've also considered the fact that [Appellant] does have family and community support as he appears before the court today. I've also considered the various statements made here by the attorneys and also [Appellant's] brief statement relative to his challenge as to jurisdiction. He – [Appellant] sent a letter that he has sent to a number of people, including the Court, the Attorney General and has made a number of claims as to jurisdiction. There's no motion before the Court, but basically what [Appellant] has been doing – And I think maybe I should set him straight right now because he obviously does not understand the law in this area with all due respect to his intelligence. He's arguing that there basically is no authority to prosecute him. He's saying that when the Commonwealth of Pennsylvania amended the Constitution in 1968, he neglects to talk about the amendments in 1973 and '74, that there was no savings clause which permitted or provided for the authority to prosecute criminal cases. He also argues the subject matter of jurisdiction in that regard, and he argues that the District Attorney's Office has no real authority to prosecute. And basically those claims are meritless.

So for your education, sir, if you would have looked up the schedule to the Constitutional amendments . . ., clearly there was a savings clause.

* * *

Now let's talk about what you did and this is what you're going to be sentenced on today. First of all the burglary and the criminal trespass, those particular offenses in my mind were absolutely heinous. That young victim, who had English as a second language[,] is a guest in our country, was severely victimized by you when you entered into her house without permission and you stayed there. And that young girl was afraid. That came out clearly at the trial.

In addition, the most recent offense involving the law library, again, I think just goes to your arrogance. You had a perfect right to use the law library. They accommodate you and other inmates over there, even when it's making ridiculous arguments, you have access to the books and the resources and that's the law, the law provides for that. Here what you did is you tore the pages out of the book, you ruined it for the other inmates there. I[t] was just an absolutely selfish act and a destructive act. And law books are expensive. As President Judge I get involved in budgetary matters. I know how much these things cost. And you ended up damaging the County in the amount of 4,000 and some dollars. And that's the taxpayers that are paying for that. And, you know, so it is a serious offense. It's not the crime of the century, I'll grant you that. But it is a serious offense. And again it goes to your arrogance.

And to top it all off, you commit these offenses not only with a prior criminal record, but while you [are] on state supervision. Under a very severe sentence that I believe was imposed by, now Senior Judge, Judge Bozza of this Court. So frankly, I think that even where you are in your life today you still have some rehabilitative potential, but you've got a bad attitude. You've got an arrogant attitude and it's pretty much you feel you can do what you want to do, when you want to do it, and the feelings or the rights of other people be damned. And so you're going to get sentenced accordingly for what you did.

N.T., 5/14/14, at 13-17.

Upon review of the record, we conclude that the sentencing court presented adequate reasons for imposing the aggravated range sentences upon Appellant that were appropriately individualized. There is no indication that the trial court ignored any relevant factors in fashioning the sentence. Rather, the sentencing court's focus was properly upon Appellant's behavior during the commission of the crimes. Accordingly, it is our determination that there was no abuse of discretion on the part of the sentencing court.

Thus, we conclude this claim lacks merit.  Based on the foregoing, we affirm the judgment of sentence.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/1/2015</u>