J-S93024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT J. KRITZAR | |
| Appellant | No. 1173 EDA 2016 |

Appeal from the Judgment of Sentence dated March 7, 2016
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0005306-2014

BEFORE: DUBOW, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY SOLANO, J.: **FILED MARCH 29, 2017**

Appellant, Robert J. Kritzar, appeals from the judgment of sentence imposed after he entered an open guilty plea to homicide by vehicle while driving under the influence of alcohol (DUI), homicide by vehicle, DUI, involuntary manslaughter, and related Motor Vehicle Code infractions. We affirm.

The trial court recited the factual background underlying this appeal as follows:

> On May 28, 2014, at approximately 8:26 p.m., Trooper Javier Alvarez of the Pennsylvania State Police was on routine patrol traveling eastbound on State Route 22 in the area of Route 145, Lehigh County, Pennsylvania. He observed vehicles stopped in the westbound lanes of travel of State Route 22. The trooper made a U-turn and began to travel west on State Route

---

[*] Retired Senior Judge assigned to the Superior Court.

22. There, he observed a tractor-trailer which was stopped. He further observed a Jeep Wrangler crushed between the tractor-trailer and a Ford F-750 box truck.

Trooper Alvarez further observed an off-duty paramedic, Peter Alexander Bronstein, attempting to assist the sole occupant of the Jeep Wrangler, Nathan Warke. Mr. Warke was trapped in the vehicle and was seriously injured. Mr. Warke subsequently died on scene. An autopsy was later performed on Mr. Warke, indicating that Mr. Warke died from multiple blunt force trauma injuries sustained as a result of a multiple motor vehicle collision.

Various law enforcement personnel were called to the scene, including Trooper Brianne Glad, a member of the Pennsylvania State Police Collision and Accident Reconstruction Unit, Trooper Robert Griffin, Jr., and Corporal Jason Troutman. Through their investigation, it was determined that Frederick Ackerman was the operator of the tractor-trailer. Mr. Ackerman told the investigators that traffic traveling westbound on Route 22 was stop and go at the time when an unknown red vehicle cut in front of him. Mr. Ackerman hit the tractor-trailer's brakes hard to avoid a collision with the red vehicle. No collision with the red vehicle took place. He began to gain forward momentum again when he heard a collision behind his tractor-trailer. Thereafter, he heard and felt an impact with the rear of his tractor-trailer.

On scene, Trooper Griffin observed an individual curled up in the fetal position between the box truck and the center concrete barrier that divided the east and westbound traffic. The person identified himself as the driver of the box truck and was later identified as the Appellant, Robert Kritzar. The Appellant was evaluated by paramedics on the scene and taken to Lehigh Valley Hospital by Trooper Griffin. No field sobriety tests were conducted on the scene due to the Appellant's medical condition and the need for medical evaluation. At the hospital, a legal blood draw was performed at 9:40 p.m. The blood sample was later tested and it was determined that [Appellant's] blood alcohol level was .22.

During the transport to the hospital, the Appellant indicated that he was driving along westbound Route 22, saw brake lights in front of him, struck the Jeep in front of him, and then both vehicles hit the rear of Mr. Ackerman's tractor-trailer.

Corporal Troutman, a member of the Forensic Evidence Unit of the Pennsylvania State Police, remained on-scene to collect evidence and to take photographs. When he opened the door to Appellant's Ford F-750 box truck, he noted that there was money strewn about the inside because of the impact with the Jeep Wrangler. He further observed a backpack with a can of beer inside of it. During the course of an inventory search of the interior, the trooper also found a half-empty bottle of Jim Beam whiskey behind the passenger seats. Photographs were taken of the contents of the vehicle.

At a later point in time, Trooper Glad conducted an accident reconstruction investigation. In addition to taking measurements at the scene and noting particular markings in the roadway, Trooper Glad inspected the three vehicles involved in the accident. She did not find any mechanical failures or deficits in any of the vehicles that would result in causing the crash. She also noted that the roadway was clear and the lighting conditions adequate at the time of the accident and that there were no defects in the roadway.

As part of her investigation of the Jeep, Trooper Glad noted that the Jeep's left brake light and center brake light both exhibited what she determined to be "hot shock," a condition where the filaments of the bulbs for the brake light, while being powered or illuminated, will stretch if subjected to a severe collision. Trooper Glad determined that the "hot shock" observed indicated that at the time of the crash the Jeep was braking. Further, Trooper Glad downloaded the contents of the engine control module of the Ford F-750 driven by the Appellant. The engine download provided vehicle crash data for approximately one minute prior to impact and then approximately one minute post impact. Trooper Glad was able to determine that the Appellant's box truck, three seconds prior to its impact with the Jeep, had been traveling at approximately 69 miles an hour and the vehicle's throttle was 100% engaged. One second later, the throttle decreased to approximately 14%. Based on her training and experience, Trooper Glad opined that the Appellant must have perceived something in front of him that would have caused him to take pressure off of the gas pedal. The Commonwealth believed that it was either the tractor-trailer or the Jeep Wrangler engaging its brakes.

Two seconds later, the box truck's engine control module indicated an impact while the box truck was traveling

approximately 66 miles per hour. The engine control module further indicated that the Appellant finally engaged the brakes on the box truck one second *after* the impact with the Jeep Wrangler occurred.

Following the impact, the box truck and the Jeep then traveled approximately 2 to 3 seconds as a single unit, and impacted with the rear of the tractor-trailer.

This was the Appellant's second DUI offense.

Trial Court Opinion, 6/9/16, at 3-6 (adopting the Commonwealth's recitation of facts at the plea hearing, N.T., 2/8/16, at 13-19).

Appellant does not dispute that he entered an open guilty plea – with no agreement as to sentencing – on February 8, 2016. The Commonwealth explained that many of the charges would merge, so that Appellant's "ultimate exposure would be to the sentences he would get for homicide by vehicle while DUI, which is a felony in the second degree, for which he faces a statutory maximum of ten years." N.T., 2/8/16, at 2-3. The trial court repeated to Appellant that the sentence had "a 3 year mandatory minimum and it has a maximum up to 10 years in prison . . . Do you understand that charge and that penalty?" *Id.* at 6. Appellant answered, "Yes, ma'am." *Id.* The trial court clarified:

And, again, I think I should reiterate for you that it would appear, out of all those charges, there are only two that really affect your exposure. One is the homicide by vehicle DUI related and the other one is the homicide by vehicle.

One is punishable with a 3 year mandatory up to a 10 year maximum. The other one is punishable by up to 7 years. I can choose to run those two consecutive to one another, meaning one after another, or I can choose to run those two concurrently

with one another, meaning at the same time as one another. So do you understand what your maximum exposure is?

*Id.* at 11. Again, Appellant answered, "Yes, ma'am." *Id.*

After Appellant entered his plea, the trial court deferred sentencing to March 7, 2016, when the trial court sentenced Appellant to an aggregate 5 to 10 years' incarceration, followed by 5 years of probation. Appellant filed a motion for reconsideration on March 16, 2016, which the trial court denied on April 6, 2016. Appellant filed this timely appeal.

Appellant presents a single issue for our review:

> Whether the Lower Court abused its discretion in imposing a manifestly excessive and unreasonable sentence which is at the statutory maximum and imposed when the Court failed to consider any significant mitigating factors, failed to apply and review all the necessary factors as set forth in 42 PA. C.S.A. §9721(b) and 42 PA. C.S.A. §9781(c) and (d) or otherwise failed to set forth appropriate reasons for its radical deviation from the standard sentencing ranges?

Appellant's Brief at 7.

Appellant challenges the discretionary aspects of his sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

>> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[ ] § 9781(b).

> Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (some citations omitted) (quoting ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006)).

Appellant filed a timely post-sentence motion and a notice of appeal, and included a statement pursuant to Rule 2119(f) in his brief. Appellant's statement reads:

> [Appellant] is requesting the review of his sentence based upon his belief that the Sentencing Court abused its discretion when it imposed a harsh and excessive sentence contrary to the fundamental norms of the Sentencing Guidelines. The sentence imposed was the maximum legally allowable sentence and was more than double the standard sentencing range as applied to [Appellant]. The deviation from the guideline range must be supported by appropriate and factually justifiable reasons and [Appellant] does not believe that the Court presented such justification.

Appellant's Brief at 11.

We thus determine whether Appellant has presented a substantial question for our review. The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Griffin***, 65 A.3d at 935 (citation and internal

quotation marks omitted). In making this determination, "we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa. Super. 2012).

Our review indicates that Appellant has raised a substantial question. *See Commonwealth v. Antidormi*, 84 A.3d 736, 759 (Pa. Super. 2014) ("This Court has held that claims that the sentencing court imposed a sentence outside the standard guidelines without stating adequate reasons on the record presents a substantial question"). Although not expressly included in his 2119(f) statement, Appellant's issue as it relates to the court's alleged failure to consider the necessary sentencing factors, including mitigating factors, also raises a substantial question. *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) ("It is well-established that a sentencing court's failure to consider mitigating factors raises a substantial question"); *Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa. Super. 2013) (concluding that Appellant's argument that the sentencing court did not consider the appropriate sentencing factors raises a substantial question). We therefore proceed to examine the merits of Appellant's sentencing issue, recognizing our standard of review.

> Our standard of review of a challenge to the discretionary aspects of sentence is well-settled:
>
>> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an

error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

In every case in which the court imposes a sentence for a felony or a misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. The sentencing guidelines are not mandatory, and sentencing courts retain broad discretion in sentencing matters, and therefore, may sentence defendants outside the [g]uidelines. In every case where the court imposes a sentence ... outside the guidelines adopted by the Pennsylvania Commission on Sentencing ... the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. However, [t]his requirement is satisfied when the judge states his reasons for the sentence on the record and in the defendant's presence. Consequently, all that a trial court must do to comply with the above procedural requirements is to state adequate reasons for the imposition of sentence on the record in open court.

When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. Where pre-sentence reports exist, we shall ... presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself.

*Antidormi*, 84 A.3d at 760–61 (internal quotation marks and citations omitted).

Instantly, the trial court stated that it had reviewed "every word and every page" of the pre-sentence investigation report, which had attached to it "the sentencing guidelines, some photographs that were taken from the

crime scene, a copy of the criminal complaint and affidavit of probable cause and then numerous letters from Mr. Warke's family and friends." N.T., 3/7/16, at 5. The trial court also reviewed Appellant's mental health records and letters on behalf of Appellant. *Id.* In addition, the trial court heard from Appellant, as well as three of the victim's friends and the victim's father. At the conclusion of the sentencing hearing, the trial court addressed Appellant:

> [Y]ou made some horrible decisions that put you on the road after having consumed an unbelievable amount of alcohol in a truck.
>
> And that was a recipe for tragedy. . . .
>
> This can't be a personality contest. I can't base a sentence on who was the better, nicer person, you or the victim, or who has more support today. . . .
>
> But you have had a horrible life. You've had a horrible, horrible life.
>
> And it seems that any time that you were able to make headway in your life – you are a one-step-forward-and-two-steps-back kind of guy. And you drank for solace. You were self-medicating. You drank to avoid feeling things that you should have been feeling and dealing with.
>
> And it doesn't excuse the behavior. It causes me to say you can't undo your past but you have to make a decision as to how you want to go forward. You have to, at some point, walk away from what has been in your life into something that's more positive and productive.
>
> Regardless of the sentence that I give you, one, this young man is not going to be brought back and two, these people are not going to be made whole. But three, regardless of the sentence I give you, you will be released into the community at some point. . . .

So that is what you need to be thinking about in prison. The sentence isn't going to satisfy anyone because Mr. Warke is right, there's not parity between a life without your loved one and whatever I impose on you.

N.T, 3/7/16, at 32-35.

The Commonwealth then referenced the pre-sentence investigation report and the fact that Appellant's first DUI was less than two years prior to the underlying DUI. *Id.* at 35. The Commonwealth further noted that in this case, Appellant was "on the job," driving a commercial vehicle, and had a blood alcohol level of .22 at the time of the crash. *Id.* at 36-38.

Prior to imposing Appellant's sentence, the trial court addressed the victim's friends and family:

I have a lot of masters to serve in order to do justice. And I'm stammering around because I'm trying to find a way to gently say what cannot be gently said, which is, I'm going to decline to run the two sentences that can be given that don't merge consecutive to one another. I will not do that.

And it's not because I don't hear you and it's not because I don't feel your pain. It's because I do believe that there has to be some acknowledgment that [Appellant] has chosen to plead guilty, to plead guilty open and to accept responsibility. . . .

I believe [Appellant] has caused all of you irreparable harm and that his conduct was nothing other than dangerous, reckless, and unconscionable. But at the end of the day, I have to do what I think is right.

N.T., 3/7/16, at 38-39.

The trial court then stated Appellant's sentence:

So in 5306 of 2014, in Counts 1, 3, 4, 5 and 6, all of those counts merge. And the sentence is . . . imprisonment for a period of not less than 5 nor more than 10 years in a state correctional institution. . . .

- 10 -

As to Count 2, the sentence is . . . probation for a period of 5 years under the supervision of the Pennsylvania State Parole Board to run consecutive to the sentence previously imposed. . . .

So the sum total of the sentence here is 5 to 10 years in a state correctional institution to be followed by 5 years of state supervised probation.

*Id.* at 39-41.

Based on the foregoing, we conclude that the record adequately supports the trial court's imposition of the statutory-maximum sentence. "The court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b). . . . [T]he record as a whole must reflect due consideration by the court of the statutory considerations." **Antidormi**, 84 A.3d at 761 (internal quotation marks and citation omitted). Furthermore, Appellant's claim that the court failed to consider the necessary sentencing factors, including mitigating facts, is meritless because the court had the benefit of a pre-sentence investigation report. **See id.**; **Commonwealth v. Downing**, 990 A.2d 788, 794 (Pa. Super. 2010) ("Our Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed"). Finally, Appellant does not dispute the open nature of his plea. As described above, Appellant was advised repeatedly that his sentence could range from the mandatory 3 year minimum to the 10 year maximum. He nonetheless claims that the trial court "defeated [his] expectation of

receiving the three year mandatory but also gave [him] no credit for his remorse and acceptance of responsibility." Appellant's Brief at 14. Any expectation Appellant may have had of a 3 year minimum sentence has no basis in the record. Moreover, the trial court did credit him for his acceptance of responsibility when it ran his sentences concurrently rather than consecutively. N.T., 3/7/16, at 39 (declining to run Appellant's two sentences consecutively "because I do believe that there has to be some acknowledgment that [Appellant] has chosen to plead guilty, to plead guilty open and to accept responsibility"). Accordingly, we discern no abuse of sentencing discretion by the trial court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2017