**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Thomas Anthony PROVENZANO,**
**Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 13, 2012.

Filed July 27, 2012.

Todd E. Henry, Philadelphia, for appellant.

* President Judge Emeritus McEwen did not participate in the consideration or decision of this case.

Elmer D. Christine, Jr., Assistant District Attorney, Stroudsburg, for Commonwealth, appellee.

Before: MUSMANNO, LAZARUS, JJ., McEWEN, P.J.E.*

OPINION BY LAZARUS, J.

¶ 1 Thomas Anthony Provenzano appeals from the judgment of sentence, imposed by the Court of Common Pleas of Monroe County, after a jury found him guilty of two counts of indecent assault.[1] On appeal, he claims that the evidence was insufficient to prove his convictions and that the trial court incorrectly calculated his prior record score (PRS). Upon review, we affirm the conviction, but vacate the sentence and remand for resentencing.

¶ 2 The trial court set forth the procedural and factual history of this case in its opinion denying post-sentence motions:

K.F. ("Victim"), [was] a 15 year old girl who [was] considered mentally disabled. She ha[d] an [Intelligence Quotient (IQ)] of 50, function[ed] at a second to third grade level and her level of broad independence [was] at an average of five years and one month. On September 2, 2009, four witnesses saw the Defendant and the Victim alone in the Defendant's vehicle while parked in the parking lot of [Perkins] Family Restaurant in Mount Pocono, Monroe County. The Victim and the Defendant began to kiss. The kissing was described by the witnesses as "French kissing", "hot and heavy" and "passionate." At first, the witnesses thought that the Victim, who was wearing a baseball cap, was male. However, when the Victim removed the baseball cap and her long hair was re-

1. 18 Pa.C.S. § 3126(a)(6) (person with mental disability); 18 Pa.C.S. § 3126(a)(8) (person less than 16 years of age).

vealed, the witnesses realized that the Victim was in fact a female.

The Victim and the Defendant continued to kiss. Thereafter, the Victim's head disappeared in the area of the Defendant's lap. Many of the witnesses stated that they thought the Victim was giving the Defendant oral sex. After a few minutes, the Victim's head came back up and the Defendant wiped off the Victim's chin; they kissed again. After this encounter ended, the Victim looked in the mirror and adjusted herself, fixing her hair and glasses.

The Defendant and the Victim left the Defendant's car holding hands and entered the restaurant. The two were seated at a table and ordered food. While at the table, the Victim and the Defendant were looking at each other from across the table and holding hands. The Victim and the Defendant ate, paid for their food, left the restaurant holding hands and got into the Defendant's car. The Defendant then drove to the Walmart parking lot.

Pedro "Pee Wee" Maldonado, one of the cooks at Perkins and a witness to the aforementioned events, thought that he recognized the Victim and felt that he "needed to go and get her." As such, Maldonado went to his own car, took off his uniform and proceeded to the Defendant's car. There, he saw the Victim sitting on top of the Defendant facing him. The two were kissing very passionately and the Defendant was "caressing" the Victim's back. Maldonado banged on the car. This caused the Defendant to open his door and "toss" the Victim out of the driver's side door. The Victim ran to Maldonado repeating "I'm sorry Pee Wee" over and over. Maldonado explained that the Victim had nothing to be sorry about. The Defendant got out of his vehicle and

tried to talk to Maldonado, asking to explain and stating that he had a family. Maldonado told him to "shut up and back away." Maldonado called the Victim's mother and was told to take the Victim away from the Defendant. Maldonado took the Victim into the restaurant and the police were called.

Trial Court Post–Sentence Motion Opinion, 6/15/2011, at 10–11 (record citations omitted).

¶ 3 Following a police investigation of the incident, Provenzano was arrested and charged with a series of offenses, including multiple counts of indecent assault and corruption of a minor. The case eventually proceeded to a jury trial, at which the Commonwealth produced the above-summarized evidence. Provenzano took the witness stand and testified that while there was physical contact between him and the victim, it was in the nature of familial affection and not sexual. The jury ultimately convicted Provenzano of one count of indecent assault upon a person with a mental disability and one count of indecent assault upon a person who was less than sixteen years of age.

¶ 4 On January 18, 2011, the trial court sentenced Provenzano to a term of imprisonment of 18 to 60 months for the indecent assault (person with mental disability) conviction, and a concurrent term of 12 to 24 months' imprisonment for the indecent assault (person less than sixteen years of age) conviction. In determining its sentence, the trial court reviewed an ordered presentence investigation report (PSI) which included Provenzano's five prior convictions from the state of New Jersey (attempted possession of burglary tools; aggravated unlicensed operation of motor vehicle; possession/use of controlled substance; criminal trespass; and assault on correctional officer). Post-sentence mo-

tions were timely filed and denied. This appeal followed.

¶ 5 Provenzano raises the following issues for our review:

(1) Whether the evidence was sufficient to support the conviction of indecent assault [of a person with a mental disability, 18 Pa.C.S. § 3126(a)(6) ] because the evidence failed to establish that the [victim] had a mental disability and that [Provenzano] had indecent contact with the [victim].

(2) Whether the evidence was sufficient to support the conviction of indecent assault [of a person under the age of sixteen, 18 Pa.C.S. § 3126(a)(8) ] because the evidence failed to establish that [Provenzano] had indecent contact with the [victim.]

(3) Whether the trial court erred in sentencing [Provenzano] when it incorrectly calculated [Provenzano's] prior record score and sentencing guidelines[.]

Appellant's Brief, at 3.

¶ 6 In his first two issues, Provenzano challenges the sufficiency of the evidence to support his convictions. In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Randall,* 758 A.2d 669, 674 (Pa.Super.2000).

¶ 7 Provenzano first argues that despite the fact that the victim's school testing demonstrated that she had an IQ of 50 and the ability to conduct herself "at an elementary [school] age,"[2] the evidence produced by the Commonwealth failed to demonstrate that "the [victim] suffer[ed] from a mental disability which render[ed][her] incapable of consent" pursuant to 18 Pa.C.S. § 3126(a)(6). However, Provenzano offers no support for this assertion. Nor does he support his claim that the evaluation of a victim's mental capacity must follow the statutory paradigm for evaluating whether a defendant is a sexually violent predator. *See* Appellant's Brief, at 11–13.

¶ 8 Based on our evaluation of the record and the prevailing case law, we conclude that the Commonwealth's evidence, which consisted primarily of the testimony of the victim's "life skills" teacher[3] from the Pocono Mountain School District—who testified that the victim had an IQ of 50, and the decision-making capacity of an elementary school student—fairly put the question of the victim's capacity to consent before the jury. *See generally Commonwealth v. Crosby,* 791 A.2d 366 (Pa.Super.2002) (record established victim's mental disability where victim's mother testified regarding victim's mental impairment under section 3126(a)(6)). Moreover, Provenzano presented no evidence, expert or otherwise, to contradict the fact that the victim, despite her chronological age, was operating on a grade school level and had a reduced mental capacity to consent to sexual contact. Therefore, we find no merit to this claim.

2. *See* N.T. Jury Trial, 9/9/2010, at 43.

3. The victim's former teacher testified that the "life skills" curriculum was "basically a program for individuals who ha[d] low cognitive ages and mental abilities like [sic] the mental retardation range," which taught skills so such students could "function in the outside community." N.T. Jury Trial, 9/9/2010, at 41.

¶ 9 Provenzano next contends that the evidence was insufficient to sustain the finding that there was any indecent contact between him and the victim. We note that:

> The separate crime of indecent assault was established because of a concern for the outrage, disgust, and shame engendered in the victim rather than because of physical injury to the victim. Due to the nature of the offenses sought to be proscribed by the indecent assault statute, and the range of conduct proscribed, the statutory language does not and could not specify each prohibited act.

*Commonwealth v. Hawkins*, 419 Pa.Super. 37, 614 A.2d 1198, 1201 (1992) (citation and quotation omitted).

¶ 10 In *Commonwealth v. Ricco*, 437 Pa.Super. 629, 650 A.2d 1084, 1086 (1994), this Court held that the Commonwealth need not establish "skin to skin" contact in order to sustain a conviction for indecent assault, and that the involuntary placement of the victim's hand over the clothed genitals of the defendant was sufficient evidence of indecent assault. In arriving at this conclusion, the Court again emphasized the "shame, outrage and disgust" on the part of a victim that is subjected to such an assault as a relevant consideration in determining whether an indecent assault had occurred.[4] *Id.*

¶ 11 Subsequently, in *Commonwealth v. Capo*, 727 A.2d 1126, 1127 (Pa.Super.1999), this Court affirmed the conviction of a man who had grabbed a young woman by her arm and attempted to kiss her on the mouth. Even though the man managed only to kiss the young woman on her face and neck, he had also placed his hands on her shoulders and stomach without her consent. Due to the involuntary nature of this contact, it was deemed sufficient to sustain a conviction for indecent assault. It is of particular note that this Court, in affirming the conviction, rejected the defendant's argument that he could not be convicted of indecent assault because he had not touched the victim's breasts or genitalia. *Id.* at 1128.

¶ 12 Most on point with the facts in this case is this Court's decision in *Commonwealth v. Evans*, 901 A.2d 528 (Pa.Super.2006), wherein this Court rejected the argument that "a kiss on the mouth [was] not the type of conduct the statute was intended to prevent." *Id.* at 533. This Court explicitly stated that "the act of wrapping one's arms around another person and inserting one's tongue into another's mouth clearly involves the touching of an intimate part of that person [and] . . . does not occur outside of the context of a sexual or intimate situation." *Id.*

¶ 13 Based on the holdings of these cases, we conclude that the evidence presented by the Commonwealth—that Provenzano was involved in an exchange of passionate kisses with a mentally challenged minor victim who straddled him and sat on his lap—was sufficient to prove that indecent contact occurred between Provenzano and the victim. *See generally Commonwealth v. McClintic*, 851 A.2d 214, 216 (Pa.Super.2004) *rev'd on other grounds*, 589 Pa. 465, 909 A.2d 1241 (2006) (jury was free to determine that offensive touching of victim's breast, committed during robbery, was indecent assault).

---

4. It bears emphasis that the Commonwealth introduced evidence that, when confronted, Provenzano sought to apologize for his conduct, and attempted to stave off any further inquiry by pleading that he "ha[d] a family."

N.T. Jury Trial, 9/9/2010, at 36. Such actions clearly evince a consciousness of guilt on the part of Provenzano that his conduct was shameful and an outrage to the community.

¶ 14 In his final claim, Provenzano contends that his sentence was improper because the trial court miscalculated his PRS under the Sentencing Guidelines. This averment challenges the discretionary aspects of the sentence imposed. *See Commonwealth v. Archer*, 722 A.2d 203, 210–11 (Pa.Super.1998) *(en banc)*. It is well settled that there is no automatic right to appeal the discretionary aspects of a sentence. *Commonwealth v. McNabb*, 819 A.2d 54, 55 (Pa.Super.2003); 42 Pa. C.S.A. § 9781(b). Rather, before this Court will address the merits of a challenge to the discretionary aspects of a sentence, an appellant must meet two requirements. *Commonwealth v. Titus*, 816 A.2d 251, 255 (Pa.Super.2003). First, an appellant "must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." *Commonwealth v. L.N.*, 787 A.2d 1064, 1071 (Pa.Super.2001) (citing Pa.R.A.P. 2119(f)). Second, an appellant must demonstrate that there is a substantial question that the sentence imposed is inappropriate under the Sentencing Guidelines. *Id.*

¶ 15 A substantial question exists where an appellant "advances a colorable argument that the trial court's actions were inconsistent with a specific provision of the sentencing code, or contrary to the fundamental norms underlying the sentencing process." *Id.* In determining whether a substantial question exists, "[o]ur inquiry must focus on the *reasons* for which the appeal is sought in contrast to the *facts* underlying the appeal, which are necessary only to decide the appeal on the merits." *McNabb, supra* at 56 (citation omitted) (emphasis in original). Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) state-

ment to determine whether a substantial question exists. *Commonwealth v. Jones*, 427 Pa.Super. 345, 629 A.2d 133, 138 (1993).

¶ 16 In the instant case, Provenzano has complied with Pa.R.A.P. 2119(f) by filing a concise statement of reasons for allowance of appeal from the discretionary aspects of sentence. *See* Appellant's Brief, at 9. Additionally, because Provenzano claims that the trial judge utilized an incorrect PRS in computing his sentence under the Pennsylvania Sentencing Guidelines, he has also presented a substantial question. *See Commonwealth v. Janda*, 14 A.3d 147, 165 (Pa.Super.2011) (improper calculation of PRS based on out-of-state offenses raises substantial question). Accordingly, we will now address the merits of the sentencing issues raised on appeal, pursuant to the following standard:

[T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957, 961 (2007) (citation and quotation omitted).

¶ 17 Provenzano contends that the trial court miscalculated his PRS by erroneously determining the equivalent Pennsylva-

nia crime for two of his five previous New Jersey offenses. According to his PSI, Provenzano had five previous convictions in the state of New Jersey: (1) attempted possession of burglary tools (M); (2) aggravated unlicensed operator of motor vehicle-second degree (M); (3) possession of controlled substance (F); (4) criminal trespass (S); and (5) assault on correctional Officer (F). Trial Court Post–Sentence Motion Opinion, *supra* at 5. The trial court concluded that under Pennsylvania criminal law and the Pennsylvania Sentencing Guidelines,[5] these convictions respectively equated to: (1) possessing instruments of crime [6] (PIC)(M–1); (2) habitual offenders [7] (M–2); (3) possession of controlled substance [8] (M); (4) criminal trespass [9] (S); and (5) assault of correction officer [10] (F–2). *Id.*

¶ 18 Based on this determination of equivalent Pennsylvania crimes, the trial court calculated Provenzano's PRS as four. The court reasoned that:

First, with regard to the F–2, Assault of Correction Officer, this is scored at **two points** as it is an F–2 offense that is not listed in § 303.7(a)(1) or (a)(2) [6] [[6] 204 Pa.Code § 303.7(a)(3) ] (emphasis added). Second, the Possession of Instruments of Crime offense is scored at **one point** as it is an M–1 offense that involves a weapon [7] [[7] 204 Pa.Code § 303.7(a)(4) ]. (emphasis added). Finally, **one point** is added as the Defendant has been convicted of two to three misdemeanors, namely, Possession of Instruments of Crime, Habitual Offenders and Possession of a Controlled Substance.[8] [[8] 204 Pa.Code § 303.7(a)(5)(i) ] (emphasis added).

These points add up to a total prior record score of **four.** (emphasis added).

Trial Court Post Sentence Motion Opinion, *supra* at 3–8 (emphasis in original).

¶ 19 Provenzano first argues that the trial court erred in characterizing his prior New Jersey conviction of "Attempted Possession of Burglary Tools" as the equivalent of Pennsylvania's PIC.

¶ 20 Courts score a defendant's out-of-state convictions for purposes of a PRS pursuant to 204 Pa.Code § 303.8, which states in relevant part:

(1) An out-of-state, federal or foreign conviction or adjudication of delinquency is scored as a conviction for the current equivalent Pennsylvania offense.

. . .

(3) When there is no current equivalent Pennsylvania offense, determine the current equivalent Pennsylvania grade of the offense based on the maximum sentence permitted, and then apply § 303.8(d)(2).

204 Pa.Code § 303.8(f). However, according to section 303.8(d)(2):

When there is no current equivalent Pennsylvania offense, prior convictions or adjudications of delinquency are scored under § 303.7 based on the grade of the offense. When a prior conviction or adjudication of delinquency was for a felony, but the grade of the felony is unknown, it shall be treated as a Felony 3. When a prior conviction was for a misdemeanor, but the grade of the misdemeanor is unknown, it shall be treated as other misdemeanors. When it cannot be determined if the prior conviction

---

5. 204 Pa.Code § 303.8.

6. 18 Pa.C.S.A. § 907.

7. 75 Pa.C.S.A. § 6503.1.

8. 35 P.S. § 780–113(a)(16).

9. 18 Pa.C.S.A. § 3503(b)(1).

10. 18 Pa.C.S.A. § 2702(a)(3).

was a felony, one point misdemeanors, or other misdemeanors, it shall be treated as other misdemeanors. When a prior conviction is for a crime which has a summary grade, and the grade of the conviction is unknown, the prior conviction shall not be counted in the Prior Record Score.

204 Pa.Code § 303.8(d)(2).

¶ 21 The trial court found that, under Pennsylvania law, no exact equivalent existed for the New Jersey misdemeanor of attempted possession of burglary tools, and thus equated it to "Possessing Instruments of Crime." The trial court proceeded to score this offense at one for the purposes of determining Provenzano's PRS, reasoning that it was a first-degree misdemeanor involving a weapon.[11] Trial Court Opinion, *supra* at 7. The court graded this prior conviction pursuant to the authority of 204 Pa.Code § 303.7(a)(4), which instructs a judge to add one point for several misdemeanor 1 offenses that involve weapons, including Possession of an instrument of crime (possession of a weapon).[12] *See* 204 Pa.Code § 303.7(a)(4).

■ ¶ 22 Upon a thorough review of the record, however, this Court finds no support for the lower court's determination that this past offense involved a weapon. In fact, this Court finds nothing at all in the record indicative of what incriminating instrument Provenzano possessed that led to his prior conviction. The Sentencing Guidelines clearly instruct that "[w]hen

---

11. *See* 18 Pa.C.S. § 907 (definition of weapon for purposes of PIC).

12. *See* 18 Pa.C.S. § 907(b) (first-degree misdemeanor under PIC statute to possess a firearm or other weapon concealed upon a person with intent to employ it criminally).

13. The Pennsylvania Sentencing Guidelines establish that:
    All other misdemeanor offenses, including a first lifetime conviction for Driving Under

---

there is no current equivalent Pennsylvania offense, prior convictions or adjudications of delinquency are scored under § 303.7 based *on the grade of the offense.*" 204 Pa.Code § 303.8(d)(2) (emphasis added). Because the trial court's unfounded factual assumption effectively aggravated the grade of the misdemeanor to a misdemeanor 1 involving a weapon, the court departed from the Sentencing Guidelines by not scoring based on the equivalent grade of the offense. Without assuming the crime involved the possession of a weapon, the trial court would have correctly scored the offense as other lesser misdemeanors pursuant to 204 Pa.Code § 303.7(a)(5).[13] The trial court, therefore, abused its discretion when it scored Provenzano's PIC conviction at one based on the unsupported assumption that the crime was a misdemeanor 1 involving a weapon.

■ ¶ 23 Next, Provenzano argues that the trial court erred in characterizing the New Jersey conviction of "Assault of Corrections Officer" as equivalent to Pennsylvania's crime of aggravated assault, which is a second-degree felony, punishable by up to 10 years in prison. As we previously stated, in computing a PRS for an out-of state conviction, the following rule applies:

When there is no current equivalent Pennsylvania offense, [the trial court shall] determine the current equivalent Pennsylvania grade of the offense based on the maximum sentence permitted, and then apply § 303.8(d)(2).

the Influence of Alcohol or a Controlled Substance or Operating a Watercraft Under the Influence of Alcohol or a Controlled Substance, are designated by an "m" in the offense listing at § 303.15, and are scored as follows: (i) One point is added if the offender was previously convicted of two or three misdemeanors.
204 Pa.Code § 303.7(a)(5)-(i).

42 Pa.C.S. § 9721; 204 Pa.Code § 303.8(f)(3).

¶ 24 Here, the record reveals that the New Jersey offense of "Assault of Corrections Officer," was classified in New Jersey as a felony of the fourth degree. No Pennsylvania offense could serve as a perfect equivalent, as Pennsylvania classifies felonies only through three degrees, while New Jersey grades its crimes into four degrees. *Compare* 18 Pa.C.S. § 106(a)— (b)(1)-(5) *with* N.J. Statutes § 2C:43–6(a). Thus, the maximum sentence allowed must guide the determination of the equivalent offense. 204 Pa.Code § 303.8(f)(3).

¶ 25 The maximum penalty in New Jersey for a conviction of a felony of the fourth degree is a term of imprisonment of eighteen months. *See* N.J. Statutes § 2C:43–6(a)(4). Such a sentence is far less severe than any sentence attached to a felony conviction in Pennsylvania. *See* 18 Pa.C.S. § 1103 (maximum penalty for third-degree felony is seven years). In fact, the New Jersey sentence is comparable only to the Pennsylvania penalty attached to a conviction for a misdemeanor of the second degree, which provides for a maximum sentence of two years. *See* 18 Pa.C.S. § 1104(2). The New Jersey conviction is, therefore, most similar to a Pennsylvania conviction for simple assault graded as a misdemeanor of the second degree, and the trial court should have graded it as such. *See* 18 Pa.C.S. § 2701(b). Consequently, the trial court abused its discretion in equating Provenzano's prior assault conviction in New Jersey to a second degree felony in Pennsylvania.

¶ 26 Because these two sentencing errors affected Provenzano's PRS, we must remand for resentencing. The trial court found Provenzano's PRS to be four; taking into account the errors just reviewed, however, Provenzano's PRS should have been calculated at two.[14] Therefore, on the basis that the trial court erred in the computation of Provenzano's PRS, and concomitantly erred in its application of the Sentencing Guidelines, we are compelled to vacate the judgment of sentence, and remand for resentencing. *Commonwealth v. Eyster*, 401 Pa.Super. 477, 585 A.2d 1027 (1991).

¶ 27 Additionally, our analysis of sentence compels the further observation that the trial court improperly imposed separate sentences upon Provenzano for one instance of conduct that coincidentally violated two separate subsections of the indecent assault statute, *i.e.*, subsection (a)(6) and (a)(8) of section 3126. Such a sentence constitutes an illegal sentence, which this Court may address *sua sponte*. *See Commonwealth v. Archer*, 722 A.2d 203, 209 (Pa.Super.1998) (*en banc*) (Pennsylvania appellate courts may address illegal sentences *sua sponte); see also Commonwealth v. Owens*, 437 Pa.Super. 64, 649 A.2d 129, 137–39 (1994) (two concurrent sentences issued under two separate subsections of section 3126 of Crimes Code for one instance of indecent assault constituted illegal sentences). *Cf. Commonwealth v. Dobbs*, 452 Pa.Super. 488, 682 A.2d 388, 391–93 (1996) (convictions under two separate subsections of aggravated assault statute constitute one offense for sentencing purposes when factual predicate for both convictions was single act). Consequently, upon remand the trial court is empowered to impose a sentence on only

---

14. Provenzano was convicted of the Pennsylvania equivalents of a misdemeanor of the first degree, two misdemeanors of the second degree, a misdemeanor, and a summary offense. Under 204 Pa.Code § 303.7(a)(5)(ii),

"Two points are added if the offender was previously convicted of four to six misdemeanors." Because Provenzano was convicted of four misdemeanors, his PRS should have been two.

one count of indecent assault as defined under 18 Pa.C.S. § 3126.

¶ 28 Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.