J-A22019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                             :             PENNSYLVANIA
                             :
             v.                 :
                             :
                             :
STEVEN COREY MORRISON          :
                             :
           Appellant         :      No. 1374 MDA 2019

Appeal from the Judgment of Sentence Entered March 21, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004605-2017

BEFORE: SHOGAN, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.:           **FILED DECEMBER 23, 2020**

Appellant, Steven Corey Morrison, appeals from the judgment of

sentence entered on March 21, 2019, in the Berks County Court of Common

Pleas. After review, we affirm.[1]

The trial court summarized the factual background of this case as

follows:

> On Friday, July 7, 2017, an operation involving detectives
> from the police departments of Wyomissing Borough, City of
> Reading, and Spring Township, and agents from the United States
> Department of Homeland Security was conducted at a hotel in the
> Borough of Wyomissing related to suspected prostitution and sex

---

[1] On August 19, 2020, Appellant filed an Application to Supplement the Record
in this matter. In his Application, Appellant sought to include the notes of
testimony from his Omnibus Pretrial Hearing held on March 19, 2018. We
note that on September 21, 2020, the trial court supplemented the certified
record in this matter with the March 19, 2018 notes of testimony. Accordingly,
because the certified record contains the March 19, 2018 notes of testimony,
Appellant's Application to Supplement the Record is denied as moot.

trafficking. Two law enforcement officers initiated the investigation and began contacting women advertising for sex *via* [a now defunct website entitled] Backpage.

Morgan Rehrig testified that she met [Appellant] in June 2017 on the street in Reading. Rehrig was homeless at the time and [Appellant] offered her a place to stay and a chance to make money as a sex worker. As part of her work in prostitution she used a Backpage online profile created at the direction of and with assistance from [Appellant] and a cell phone provided by [Appellant]. In exchange she lived in an apartment offered to her by [Appellant] and gave [Appellant] the money that she made. [Appellant] also provided Rehrig with food and drugs, often in lieu of cash money.

Rehrig further testified that on July 7, 2017, she agreed to meet a man (an undercover detective) for sex at the Inn at Reading using the cellphone [Appellant] had provided. [Appellant] was with her inside her room at the time. [Appellant] arranged for a third person to drive Rehrig to the Inn at Reading, and [Appellant] rode along to the hotel. When they arrived Rehrig was dropped off at the entrance of the hotel because it was raining. She called the phone number for the man she was meeting and was given a room number. Two Wyomissing police officers followed the vehicle as it left the hotel. Rehrig entered the room with the man and they agreed on a price for sex. At the [sic] point Rehrig was detained by law enforcement and stated that she was acting under the direction of one of the men in the car ([Appellant]). Based on this information [Appellant's] vehicle was stopped, and [Appellant] was arrested.

Trial Court Opinion, 12/2/19, at 1-2 (footnote omitted).

On October 24, 2017, the Commonwealth charged Appellant with three counts of prostitution and one count of possessing a controlled substance. Information, 10/24/17. On February 5, 2019, the Commonwealth filed an amended information which added, *inter alia*, a fourth count of prostitution, and specified that Appellant's crimes occurred between June 27, 2017, and July 7, 2017. Amended Information, 2/5/19. Accordingly, Appellant was

- 2 -

charged as follows: count one, encouraging, inducing, or otherwise intentionally causing another to become or remain a prostitute, 18 Pa.C.S. § 5902(b)(3); count two, transporting a person into or within this Commonwealth with the intent to promote the engaging in prostitution by that person, or procuring or paying for transportation with that intent, 18 Pa.C.S. § 5902(b)(6); count three, leasing or otherwise permitting a place controlled by the actor, alone or in association with others, to be regularly used for prostitution or the promotion of prostitution, 18 Pa.C.S. § 5902(b)(7); count four, possessing a controlled substance, 35 P.S. § 780-113(a)(16); and count five, soliciting, receiving, or agreeing to receive any benefit from prostitution, 18 Pa.C.S. § 5902(b)(8).

On December 4, 2017, Appellant filed a pretrial motion to suppress in which he asserted that the police illegally stopped the vehicle in which he was a passenger and that the subsequent search of his person was unlawful. Motion, 12/4/17. Appellant contended that any evidence seized as a result of that arrest and search should be suppressed. *Id.* On March 19, 2018, the trial court held a suppression hearing. On July 11, 2018, the trial court denied Appellant's suppression motion, and Appellant's case proceeded to a jury trial. At the conclusion of his trial, the jury found Appellant guilty of all four counts of prostitution and one count of possessing a controlled substance.

On March 21, 2019, the trial court held a sentencing hearing. The trial court provided Appellant with credit for time-served and sentenced Appellant

as follows: count one, eighteen to thirty six months of incarceration; count two, eighteen to thirty six months of incarceration consecutive to count one; count three, twelve to twenty-four months of incarceration consecutive to count two; count four, twenty-four months of probation consecutive to count three; and count five, twelve to twenty-four months of incarceration concurrent with count three. Sentencing Order, 3/21/19. This resulted in an aggregate sentence of forty-eight to ninety-six months of incarceration, followed by twenty-four months of probation. *Id.* Appellant filed post-sentence motions, and the trial court held a hearing on May 8, 2019. On July 18, 2019, the trial court denied Appellant's post-sentence motions, and Appellant filed a timely appeal on August 16, 2019. The trial court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) and drafted an opinion addressing only the issues Appellant raised in the post-sentence motions. Trial Court Opinion, 12/2/19.

On appeal, Appellant presents two issues for our consideration:

1. Whether the [s]uppression [c]ourt erred in denying Appellant's motion to suppress physical evidence where the record demonstrates than an improper detention, *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] frisk, and search of Appellant's person occurred.

2. Whether the [s]entencing [c]ourt erred in imposing illegal sentences on [the prostitution convictions at] counts one, two, three and five.

Appellant's Brief at 13 (internal footnote omitted).

In his first issue, Appellant challenges the trial court's denial of his suppression motion.[2]  When faced with an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. ... Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Eichinger**, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted).  "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony."  **Commonwealth v. Gallagher**, 896 A.2d 583, 585 (Pa. Super. 2006).  Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing.  **In re L.J.**, 79 A.3d 1073, 1087 (Pa. 2013).

The record reflects that on July 7, 2017, the Wyomissing police Department, in conjunction with the United States Department of Homeland Security, were investigating human trafficking and prostitution.  N.T.,

---

[2]  Appellant's first issue concerns Appellant's possession of a controlled substance, which Appellant avers was discovered pursuant to an illegal search and seizure.  This issue has no bearing on the prostitution charges, and Appellant's counsel admitted at the suppression hearing that the suppression issue concerned only the possession charge.  N.T., 3/19/18, at 5-6.

3/19/18, at 7-8, 13. Wyomissing Police Officer Douglas Goeltz testified that he and Officer Joe Klatt were in uniform and assisting in the investigation. *Id.* at 8. Officers Goeltz and Klatt were stationed in an unmarked police car at the Inn at Reading hotel. *Id.* at 8-9. Inside the hotel, other officers and agents of the Department of Homeland Security were waiting for a prostitute to arrive. *Id.* at 10. Officer Goeltz was in real-time communication via radio with the officers inside of the hotel. *Id.* Officer Goeltz testified that a black Hyundai pulled into the hotel's parking lot. The driver of the car was a white male, there was a black male in the passenger seat, and a white female in the backseat. *Id.* The woman, who was later identified as Morgan Rehrig, exited the car and entered one of the hotel rooms. *Id.* at 11. The black Hyundai then left the parking lot. *Id.* Officers Goeltz and Klatt followed the Hyundai and witnessed the vehicle make an illegal turn onto Woodland Road. *Id.* at 12. Around this time, law enforcement officers at the hotel radioed Officer Goeltz and relayed that the Hyundai had dropped off Rehrig at the hotel for purposes of prostitution. *Id.* at 13. Officers Goeltz and Klatt effectuated a traffic stop of the Hyundai. *Id.* When the officers approached the car, the driver started yelling "cuss words" at the officers and the occupants of the Hyundai began reaching under the seats and around the dashboard area of the car. *Id.* Officer Klatt focused on the driver and had him exit the car. *Id.* Officer Goeltz approached Appellant, who was the passenger, and asked him to exit the car. *Id.* After Appellant stepped out of

the car, Officer Goeltz patted down Appellant and felt baggies that the officer identified as "nickel bags of marijuana." *Id.* at 14. Testing later revealed that the baggies contained synthetic marijuana. *Id.*

Officer Goeltz explained that he asked Appellant to exit the car for a pat-down search for the officers' safety. N.T., 3/19/18, at 15. Officer Goeltz testified that he believed Appellant may be armed because he saw Appellant reaching around the interior of the vehicle during the traffic stop and the nature of the underlying investigation was human trafficking. *Id.* Officer Goeltz stated that he patted down only the outside of Appellant's clothes and felt bulges that he immediately identified as packaged marijuana. *Id.* at 15-17.

Appellant avers that the search and arrest were illegal and asserts that the traffic stop was based on nothing more than "a hunch." Appellant's Brief at 24. We disagree. "When a police officer lawfully stops a motorist for a violation of the Pennsylvania Motor Vehicle Code, the officer is permitted to ask the driver to step out of the vehicle as a matter of right." *Commonwealth v. Parker*, 957 A.2d 311, 314-315 (Pa. Super. 2008) (citations and internal quotation marks omitted). Case law concerning when and under what circumstances a police officer may conduct a pat-down search provides as follows:

> "[T]he [F]ourth [A]mendment to the United States Constitution as well as Article I, § 8 of the Pennsylvania Constitution protect citizens from 'unreasonable searches and seizures.'" *Commonwealth v. Baer*, 439 Pa. Super. 437, 654 A.2d 1058,

1059 (1994). Warrantless searches and seizures (such as occurred in this case) are unreasonable *per se*, unless conducted pursuant to specifically established and well-delineated exceptions to the warrant requirement. ***Katz v. United States***, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One such exception, the ***Terry*** "stop and frisk," permits a police officer to briefly detain a citizen for investigatory purposes if the officer "observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot." ***Commonwealth v. Fitzpatrick***, 446 Pa. Super. 87, 666 A.2d 323, 325 (1995); ***Terry v. Ohio***, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

   ***Terry*** further held that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others" the officer may conduct a pat down search "to determine whether the person is in fact carrying a weapon." ***Terry***, 392 U.S. at 24, 88 S.Ct. 1868. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." ***Adams v. Williams***, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

   In order to conduct an investigatory stop, the police must have reasonable suspicion that criminal activity is afoot. ***Terry***, 392 U.S. at 30, 88 S.Ct. 1868. In order to determine whether the police had reasonable suspicion, the totality of the circumstances—the whole picture—must be considered. ***United States v. Cortez***, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." ***Id.*** at 417–418, 101 S.Ct. 690. To conduct a pat down for weapons, a limited search or "frisk" of the suspect, the officer must reasonably believe that his safety or the safety of others is threatened. ***Commonwealth v. Arch***, 439 Pa. Super. 606, 654 A.2d 1141, 1144 (1995). If either the seizure (the initial stop) or the search (the frisk) is found to be unreasonable, the remedy is to exclude all evidence derived from the illegal government activity. ***Commonwealth v. Gibson***, 536 Pa. 123, 638 A.2d 203, 206-207 (1994).

The **Terry** totality of the circumstances test applies to traffic stops or roadside encounters in the same way that it applies to typical police encounters. **See Commonwealth v. Mesa**, 453 Pa. Super. 147, 683 A.2d 643, 646 (1996). Moreover, the principles of **Terry** apply **to all occupants of the stopped vehicle, not just the driver**. **See id.** (applying the principles of **Terry** to determine whether the police were permitted to conduct a pat down search of the passenger in a vehicle that was stopped pursuant to a motor vehicle violation). Indeed, as we have observed, "roadside encounters, between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." **In re O.J.**, 958 A.2d 561, 564 (Pa. Super. 2008) (*en banc*), citing **Michigan v. Long**, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

**Commonwealth v. Simmons**, 17 A.3d 399, 402-404 (Pa. Super. 2011) (emphasis added).

In the instant case, Officer Goeltz witnessed the vehicle in which Appellant was a passenger make an illegal turn. N.T., 3/19/18, at 12. Accordingly, on this basis alone, the officers were permitted to conduct the traffic stop. **See Commonwealth v. Rosa**, 751 A.2d 189 (Pa. 2000) (providing that a police officer is permitted to stop a vehicle if the officer witnesses the driver commit a traffic violation). Additionally, there was a second basis supporting the traffic stop; the trial court found that Officer Goeltz effectuated the traffic stop due to Rehrig's statement to police. Trial Court Opinion, 12/2/19, at 2. Rehrig told the police that she was acting as a prostitute at the direction of Appellant. **Id.**; N.T., 3/19/18, at 12-13. Rehrig's statement, which was relayed to Officer Goeltz over the police radio, provided reasonable suspicion that Appellant was engaged in criminal activity

and constituted a separate basis for the traffic stop. N.T., 3/19/18, at 12-13; *Terry*, 392 U.S. at 30; *Simmons*, 17 A.3d at 403-404. For these reasons, we conclude that traffic stop was lawful.

Furthermore, we discern no abuse of discretion or error of law in the trial court's conclusion that under the totality of the circumstances, Officer Goeltz's pat-down of Appellant was legal. Officer Goeltz testified that "officer safety" required him to conduct a pat-down search for weapons. As stated above, in addition to directing the driver to alight from the car, police officers are permitted to instruct passengers to exit the vehicle during a lawful traffic stop. *Simmons*, 17 A.3d at 404 (citing *Mesa*, 683 A.2d at 646). Appellant's furtive movements combined with the nature of the investigation into human trafficking supported Officer Goeltz's reasonable belief that Appellant may be armed, and a pat-down was necessary for the officers' safety. *See Commonwealth v. Mack*, 953 A.2d 587, 590 (Pa. Super. 2008) (stating that allowing police officers to control all movement in a traffic encounter is a reasonable and justifiable step towards protecting their safety, and if during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct that leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down search for weapons) (citations omitted).

Next, Appellant alleges that the trial court erred in concluding that during the pat-down, the criminal character of the contents of Appellant's

pocket was immediately apparent. Appellant's Brief at 26. We disagree with Appellant's assertion. "[I]f an officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." *Minnesota v. Dickerson*, 508 U.S. 366, 367 (1993); *see also Parker*, 957 A.2d at 315 ("If it becomes clear to the police officer during the pat-down that the suspect does not have any weapons on his person, the plain feel doctrine exists as an exception to allow for the seizure of non-threatening contraband when the officer feels an object whose mass or contour makes its criminal character immediately apparent.") (internal citations and quotation marks omitted). Contraband is "immediately apparent" when "the officer readily perceives, without further exploration or searching, that what he is feeling is contraband." *Parker*, 957 A.2d at 315 (citation omitted). The officer may not seize the object if, "after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search." *Id.* (citation omitted).

Officer Goeltz testified that he immediately recognized the incriminating nature of the baggies in Appellant's pocket and determined them to be marijuana. N.T., 3/19/18, at 14-17. Officer Goeltz's testimony was unequivocal. Officer Goeltz testified that based on his thirty years of

experience in conducting traffic stops and pat-downs, he recognized the bulges as packaged marijuana. *Id.* at 16-17.

The trial court credited Officer Goeltz's testimony, as it was free to do, and we may not reweigh the trial court's credibility determinations. *Gallagher*, 896 A.2d at 585. We thus conclude that the record supports the trial court's ruling, and pursuant to our standard of review, we discern no error or abuse of discretion in the trial court denying Appellant's motion to suppress the synthetic marijuana seized as a result of the pat-down. *Eichinger*, 915 A.2d at 1134; *Parker*, 957 A.2d at 315.

In his second issue, Appellant assails the legality of his sentence. Appellant avers that he cannot be convicted and sentenced for multiple subsections of Section 5902 where he was charged and convicted of only one criminal act. Appellant's Brief at 27-29. After careful review, we conclude that Appellant is entitled to no relief.

In support of his argument, Appellant cites *Commonwealth v. Shannon*, 608 A.2d 1020 (Pa. 1992); *Commonwealth v. Owens*, 649 A.2d 129 (Pa. Super. 1994); *Commonwealth v. Rhoads*, 636 A.2d 1166 (Pa. Super. 1994); and *Commonwealth v. Provenzano*, 50 A.3d 148 (Pa. Super. 2012)). Appellant's Brief at 28-29. These cases are distinguishable.

In *Shannon*, in the Opinion Announcing the Judgment of the Court, a plurality of our Supreme Court discussed the involuntary deviate sexual intercourse ("IDSI") statute, 18 Pa.C.S. § 3123. The plurality held that a

defendant could not be sentenced for violating separate subsections of the IDSI statute for a single criminal act. **Shannon**, 608 A.2d at 1021. Our Supreme Court stated that the use of the word "or" to distinguish alternative ways in which the crime of IDSI is committed "reveals a design to proscribe the same harm[.]" **Id.** at 1024.

In **Owens**, this Court addressed the indecent assault statute, 18 Pa.C.S. § 3126, and we relied on the plurality decision in **Shannon**. We held that the use of the word "or" in the indecent assault statute illustrated that the subsections were alternative bases for criminal liability. We concluded that the defendant could only be sentenced "for one episode of indecent assault." **Owens**, 649 A.2d at 139. Therefore, multiple convictions for violations of subsections of the same criminal statute cannot stand. **Id.**

Similarly, our decision in **Rhoads** also relied on **Shannon** and provided that the three subsections of the simple assault statute, 18 Pa.C.S. 2701(a)(1)-(3), reveal "a design to proscribe one harm, simple assault." **Rhoads**, 636 A.2d at 1169. Therefore, "[t]he imposition of separate sentences for the two counts of simple assault arising from a single act was an illegal sentence." Likewise, in **Provenzano**, a panel of this Court, citing **Owens**, concluded that the imposition of separate sentences for one instance of criminal conduct, which coincidentally violated two separate subsections of the indecent assault statute, constituted an illegal sentence. **Provenzano**, 50 A.3d at 157.

We point out that **Shannon**, **Owens**, and **Rhoads** were decided prior to the enactment of 42 Pa.C.S. § 9765. Section 9765 clarified the concept of merger and "lesser included offenses." Section 9765, which became effective on February 7, 2003, provides as follows:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. Although **Provenzano** was decided after the enactment of Section 9765, the opinion did not address Section 9765. Nevertheless, the holding in **Provenzano** coincided with the holdings from **Shannon**, **Owens**, and **Rhoads**, and focused on the single-criminal-act aspect. **Provenzano**, 50 A.3d at 157. In the case at bar, there were multiple criminal acts.

Despite Appellant's assertion that there was only one criminal act charged, Appellant's Brief at 29, the amended information provided a range of dates in which the criminal acts occurred. Amended Information, 2/5/19. The trial court addressed this issue as follows:

> The preliminary consideration under Section 9765 is whether the four promoting prostitution crimes at issue arose from a single act. This is because "our courts have long held that where a defendant commits multiple distinct criminal acts, concepts of merger do not apply." *Com. v. Robinson*, 931 A.2d 15, 24 ([Pa. Super.] 2007) (citations omitted). Moreover, when determining whether a defendant committed a single act, such that multiple criminal convictions should be merged for sentencing, the proper focus is not whether there was a "break in the chain" of criminal activity, but rather, whether "the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime." *Id.* at 24-25. "If so, then the defendant

- 14 -

has committed more than one criminal act." *Id.* at 25. The rationale is to "prevent defendants from receiving a 'volume discount' on crime." *Id.*

In this case, [Appellant] committed four "distinct criminal acts" [between June 27, 2017 and] July 7, 2017[], thereby supporting his convictions. The distinct acts are set forth as the second element of each offense in the court's instructions. Specifically:

CT 1 When [Appellant] (a) recruited and arranged boarding for the victim to engage in sexual activity for payment, (b) established her payment terms and handled payment, (c) provided her with a regular supply of illegal drugs, and (d) helped her create a Backpage advertising account/profile, he induced and caused her to become or remain a prostitute. 18 Pa.C.S. § 5902(b)(3).

CT 2 When [Appellant] arranged the car ride and accompanied the victim to the Berks County motel where she was picked up by law enforcement for the purpose of engaging in sexual activity for money, he procured or paid for transportation within this Commonwealth with intent to promote the engaging in prostitution by the victim. 18 Pa.C.S. § 5902(b)(6).

CT 3 When [Appellant] (a) saw to it that the victim would reside in a specific room at 125-127 S. Fourth Street, Reading, [Pennsylvania,] (b) collected/credited payment toward rent, (c) brought her food and drugs to consume in that room, (d) arranged for men to enter the room to have sex with the victim, and (e) gave her a cellphone with internet access to use while in the room to arrange sex, he controlled that room and permitted it to be used for prostitution and the promotion of prostitution. 18 Pa.C.S. § 5902(b)(7).

CT 5 Finally, when [Appellant] (a) agreed to receive payment, and (b) did in fact receive cash money as a result of the victim's sexual activity, he received a benefit for causing the victim to become and remain a prostitute at the South Fourth Street location. 18 Pa.C.S. § 5902(b)(8).

- 15 -

> Accordingly, the crimes for which [Appellant] was convicted do not merge.

Trial Court Opinion, 12/2/19, at 5-6.

We note that Appellant does not argue this issue in terms of merger under 42 Pa.C.S. § 9765. Rather, Appellant focuses on the fact that the four prostitution charges are subsections of the same criminal statute. Appellant's Brief at 27. The appellate courts of this Commonwealth have addressed this attempt at distinguishing these related concepts as follows:

> In [**Commonwealth v.**] **Baldwin**, [985 A.2d 830, 833 (Pa. 2009),] however, the Supreme Court anticipated the situation in which courts confront the issue of merging offenses defined under separate subsections of the same criminal statute. In **Baldwin**, the Court noted:
>
> > While Section 9765 indeed focuses on an examination of "statutory elements," [the Court cautioned against ignoring] the simple legislative reality that individual criminal statutes often overlap, and proscribe in the alternative several different categories of conduct under a single banner. **See, e.g.**, Aggravated Assault, 18 Pa.C.S.[] § 2702 (defining seven distinct violations of law); Involuntary Deviate Sexual Intercourse, 18 Pa.C.S.[] § 3123 (setting forth eight separate violations). Consequently, in such cases, the Supreme Court admonished that … courts must take care to determine which particular "offenses," **i.e.** violations of law, are at issue in a particular case. **See, e.g., Commonwealth v. Johnson**, 874 A.2d 66, 71 n.2 (Pa. Super. 2005) (recognizing that a particular subsection of a criminal statute may merge with another crime as a lesser-included offense even though a different subsection of that same statute may not).
>
> **Baldwin**, 985 A.2d at 837 n.6.

**Commonwealth v. Talley**, 236 A.3d 42, 53 n.5 (Pa. Super. 2020).

As stated, Appellant was charged and convicted of four subsections of the prostitution statute.  The relevant subsections are as follows:

> **(b)  Promoting  prostitution.--**A  person  who  knowingly promotes  prostitution  of  another  commits  a  misdemeanor  or felony as provided in subsection (c) of this section.  The following acts  shall,  without  limitation  of  the  foregoing,  constitute promoting prostitution:
>
> * * *
>
> (3)  encouraging,  inducing,  or  otherwise  intentionally causing another to become or remain a prostitute;
>
> * * *
>
> (6) transporting a person into or within this Commonwealth with intent to promote the engaging in prostitution by that person, or procuring or paying for transportation with that intent;
>
> (7) leasing or otherwise permitting a place controlled by the actor, alone or in association with others, to be regularly used for prostitution or the promotion of prostitution, or failure to make reasonable effort to abate such use by ejecting the tenant, notifying law enforcement authorities, or other legally available means; or
>
> (8) soliciting, receiving, or agreeing to receive any benefit for  doing  or  agreeing  to  do  anything  forbidden  by  this subsection.

18 Pa.C.S. § 5902(b)(3), (6)-(8).  These subsections proscribe the following criminal conduct: Section 5902(b)(3) criminalizes inducing or cause a person to  act  as  prostitute;  Section  5902(b)(6)  prohibits  the  transportation  of someone  within  Pennsylvania  for  the  purposes  of  prostitution;  Section 5902(b)(7) makes it illegal for a person to provide a place for a person to engage in prostitution; and Section 5902(b)(8) makes it a crime for a person

to receive a benefit from any of the criminal acts set forth in Section 5902(b). Pursuant to **Baldwin**, we conclude that these subsections are distinct categories of criminal conduct, and we hold that Appellant's separate criminal acts, which occurred over the course of several days and at several locations, do not merge. As the trial court succinctly explained, Appellant committed and was charged with each of these distinct criminal acts. Trial Court Opinion, 12/2/19, at 5-6.

After review, we conclude that Appellant is entitled to no relief. We have carefully reviewed the notes of testimony from Appellant's trial, together with the statutory language defining the four separate subsections of prostitution. Appellant's four convictions for prostitution under Section 5902(b)(3), (6), (7), and (8) did not arise from a single criminal act, and the statutory elements of each offense are not included in the statutory elements of the other offenses. Accordingly, Appellant's prostitution convictions do not merge, and there was no error in the trial court imposing separate sentences on each of the four prostitution convictions. **Talley**, 236 A.3d at 54; 42 Pa.C.S. § 9765.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Therefore, we affirm the judgment of sentence.

Appellant's Application to Supplement the Record is denied as moot. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/23/2020</u>