J-S06009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID WAYNE FAUST | : | |
| | : | |
| Appellant | : | No. 943 EDA 2020 |

Appeal from the Judgment of Sentence Entered November 15, 2018
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0000513-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID WAYNE FAUST | : | |
| | : | |
| Appellant | : | No. 944 EDA 2020 |

Appeal from the Judgment of Sentence Entered November 15, 2018
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0000512-2018

BEFORE:   PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.*

MEMORANDUM BY PANELLA, P.J.:                    Filed: May 20, 2021

David Faust appeals *nunc pro tunc* from two judgments of sentence entered in the Court of Common Pleas of Bucks County, which followed separate open guilty pleas wherein Faust, owner of a funeral home, admitted to forging physician signatures on death certificates and defrauding customers

---

* Retired Senior Judge assigned to the Superior Court.

who had pre-paid for funeral expenses, as well as using forged documents to improperly receive Social Security benefits.[1] Following those pleas, Faust received an aggregate sentence of nine to eighteen years of incarceration in addition to nine years of probation. On appeal, Faust asserts that his sentence is facially excessive or, in the alternative, that his aggregate sentence is the product of partiality, prejudice, bias, or ill-will from the sentencing court. As we determine that Faust failed to raise a substantial question in his former issue and, too, see no merit to his latter assertion, we affirm.

Given the amount of criminal offenses involved, the factual history of this case is long, complicated, and multi-faceted. However, we discern the following from Faust's guilty plea colloquies in addition to the briefs filed by the parties. After receiving information from a professional conduct investigator working for the Pennsylvania Department of State, Bucks County detectives were put on notice of several death certificates containing forged physician signatures. In total, seven forged death certificates were uncovered, which all listed Faust Funeral Home, the funeral home owned by Faust, as the funeral facility. Each certificate also contained both Faust's signature as well as his Pennsylvania funeral director license number. Those seven certificates

---

[1] Specifically, he pled guilty to: theft by deception, 18 Pa.C.S.A. § 3922(a)(1); two counts of forgery, 18 Pa.C.S.A. § 4101(a)(2), (a)(3); tampering with public records, 18 Pa.C.S.A. § 4911(a)(1); two counts of identity theft, 18 Pa.C.S.A. § 4120; impersonating a holder of a professional or occupational license, 18 Pa.C.S.A. § 4913(a)(1); theft by failure to make required disposition of funds received, 18 Pa.C.S.A. § 3927; and deceptive business practices, and 18 Pa.C.S.A. § 4107(a)(2).

were delivered by Faust to the Pennsylvania local registrar for certification purposes even though they had not actually been authorized by the certifying physicians.

When questioned by the detectives, Faust admitted to having authored the forged death certificates. At that point, Faust also relayed to them that he was injured and receiving full Social Security benefits. From this statement, the detectives inquired about how it was possible for him to simultaneously receive those full benefits while managing his funeral home. Faust's response to this inquiry did nothing to allay the detectives' concerns.

The detectives then contacted the Social Security Administration, where it was determined that Faust had been collecting social security benefits for approximately three-and-one-half years, with those benefits totaling in the hundreds of thousands of dollars. Now armed with this information, the detectives directly asked Faust whether he had been working during the period that he was receiving Social Security benefits. Faust affirmatively answered that he had been working over that time span.

Several months later, the detectives began receiving phone calls from Faust Funeral Home customers who had prepaid for certain funeral-related services, but received nothing in return. These calls led to the execution of a search warrant on Faust Funeral Home and resultantly, an examination of the complaining customers' files. Through a review of the funeral home's documents, detectives uncovered the forged death certificate of a still-living person as well as corresponding bank receipts dating back to 2003. It was

later determined that this person put a down payment on funeral expenses with Faust Funeral Home and believed that her funds were still being held for that purpose. Ultimately, after further investigation, it was established that Faust's fraudulent acts were at the expense of dozens of customers. Although he neither placed the business's received funds into an escrow trust account nor held them properly otherwise, Faust obtained approximately three hundred thousand dollars from over fifty customers and used those funds for his own personal benefit.

After receiving Faust's guilty plea, the court scheduled a sentencing hearing. The hearing was continued several times at Faust's request, and over Commonwealth objections, allegedly for the purpose of allowing Faust to gather assets for victim restitution. After a full hearing, the court sentenced Faust to a term of imprisonment of five to ten years for the theft from the customers who pre-paid their funeral costs; eighteen to thirty-six months of imprisonment for the identity theft associated with the theft of pre-paid costs; two and one-half to five years of imprisonment for the theft of Social Security benefits; and nine years of probation for other associated crimes. All four of these sentences were imposed consecutively.

Following sentencing, Faust filed post-sentence motions at both docket numbers. Despite there being several procedural irregularities throughout the

appeal process[2], both Faust and the sentencing court have now complied with their respective obligations under Pa.R.A.P. 1925. Accordingly, this matter is properly before our Court.

On appeal, Faust presents the following issues for our review:

1. Did the sentencing court abuse its discretion?

2. Was his aggregate sentence based on partiality, prejudice, bias, or ill-will?

*See* Appellant's Brief, at 4.

Both of Faust's questions appear to be interrelated and deal exclusively with the discretionary aspects of his aggregate sentence. Preliminarily, we note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute." ***Commonwealth v. Zirkle***, 107 A.3d 127, 132 (Pa. Super. 2014). Instead, such a claim "must be considered a petition for permission to appeal." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1265 (Pa. Super. 2014). As a series of procedural prerequisites, "[a]n appellant

---

[2] While Faust filed his post-sentence motions at both docket numbers, the sentencing court only entered an order denying one of those motions. Faust, *pro se*, appealed this singular order to our Court. On appeal, we found that Faust's counsel had rendered ineffective assistance, and we restored his direct appeal rights *nunc pro tunc*. ***See Commonwealth v. Faust***, 1374 EDA 2019 (Pa. Super. March 18, 2020) (unpublished memorandum). Further, we concluded that the motion associated with the other docket number was denied by operation of law. ***See id***. Immediately thereafter, Faust filed two new and now timely notices of appeal. However, the sentencing court still did not enter an order denying the second docket's post-sentence motion. Our Court then issued an order directing the sentencing court to enter an order denying that second docket's post-sentence motion by operation of law. The sentencing court has complied with this order.

must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Id*. The four-part test requires an appellant to preserve his claims at sentencing or in a post-sentence motion; file a timely notice of appeal; set forth, pursuant to Pa.R.A.P. 2119(f), a concise statement of reasons for the allowance of the appeal; and, in that statement, raise a substantial question for our review. *See Commonwealth v. Conte*, 198 A.3d 1169, 1173 (Pa. Super. 2018).

We find that Faust has complied with the first three prongs. Faust contested the discretionary aspects of his sentence in his post-sentence motions, timely appealed the sentencing court's denial of his post-sentence motions, and included a Pa.R.A.P. 2119(f) statement in his brief. Therefore, we must ascertain whether his statement, when read in its entirety, poses a substantial question for our review.

An appellant "presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (internal quotation marks and citation omitted). Whether a question is substantial is adjudicated on a case-by-case basis. *See Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa. Super. 2003). However, "we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." *Commonwealth v.*

*Provenzano*, 50 A.3d 148, 154 (Pa. Super. 2012). Moreover, a Rule 2119(f) statement that merely "contains incantations of statutory provisions and pronouncements of conclusions of law" is legally deficient. *Commonwealth v. Bullock*, 868 A.2d 516, 528 (Pa. Super. 2005) (citation omitted).

In his four-sentence statement, Faust identifies that his "sentence is well beyond the guidelines and excessive in light of the criminal conduct." Appellant's Brief, at 13. Faust then proceeds to indicate that the court erroneously, yet exclusively, focused on the impact of his actions on the victims and "failed to place sufficient reasons on the record to support consecutive terms of imprisonment." *Id*. Finally, Faust asserts that his sentence "is the result of partiality, prejudice, bias[,] or ill-will." *Id*.

Although it contains a typographical error, Faust's 2119(f) statement consists of one statutory citation: 42 Pa.C.S.A. § 9721(b). Section 9721(b) outlines the general standards a court is to utilize when crafting a specific sentence. Faust's statement does not reference any case law. Furthermore, in contrast with *Dodge*, the Commonwealth has objected to the adequacy of Faust's 2119(f) statement. *See* 77 A.3d at 1271; Appellee's Brief, at 16-20.

We agree with the Commonwealth that Faust's 2119(f) statement is woefully deficient. Each sentence is conclusory and without attribution or support. In *Commonwealth v. Robertson*, we held that "a substantial question exists where the sentencing court failed to provide sufficient reasons for imposing a sentence outside of the guidelines." 874 A.2d 1200, 1212 (Pa.

Super. 2005). However, here, while Faust mentions that his sentence exceeds the guidelines, there is no basis provided as to *why* it was in error for the court to perform this deviation. ***See Commonwealth v. Ousley***, 573 A.2d 599, 601 (Pa. Super. 1990) ("Appellant's conclusory assertion in the 2119(f) statement that the sentence exceeded the guidelines, without more, does not raise a substantial question.").

Conversely, his terse mention of the court failing to provide a sufficient rationale on the record was specific to the consecutive structure of his total sentence. A challenge to the exercise of a sentencing court's discretion to impose its sentence concurrently or consecutively does not usually raise a substantial question. ***See Commonwealth v. Pass***, 914 A.2d 442, 446-47 (Pa. Super. 2006). With that said, if such an issue is raised, the question hinges on "whether the decision to sentence consecutively raises the aggregate sentence to, what appears on its face to be, an excessive level in light of the criminal conduct at issue in the case." ***Commonwealth v. Mastromarino***, 2 A.3d 581, 587 (Pa. Super. 2010).

Under these circumstances, we conclude that Faust's 2119(f) statement does not preserve his claim that the court abused its discretion by imposing an excessive sentence. However, despite these deficiencies, which we do not condone, we conclude that Faust has established his independent claim that the aggregate sentence was the result of bias, prejudice, or ill-will raises a substantial question for our review. ***See Commonwealth v. Corley***, 31 A.3d

293, 297 (Pa. Super. 2011) (indicating that an allegation of bias raises a substantial question).

We review Faust's sentence for an abuse of discretion:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Antidormi***, 84 A.3d 736, 760 (Pa. Super. 2014) (citation omitted).

In his remaining claim, Faust believes that the sentencing court was guided by partiality, prejudice, bias, or ill-will. Faust presents a series of purported facts to evince this assertion: 1) the court determined it would sentence Faust outside of the guidelines prior to its consideration of the § 9721(b) factors; 2) the court assumed a role as advocate, rather than impartial judge, at sentencing when it belittled Faust's funeral business; 3) the court's indication that Faust's actions injured the community at large, with the court being affected personally; 4) the court's sentencing Faust to the exact same number of years as his criminal conduct spanned; and 5) the court's pejorative references to Faust: e.g., "Father Faust." Appellant's Brief, at 24-26. We find that all of these suggested incidences of prejudice or bias are inaccurate, irrelevant, or insufficient.

Initially, we note that Faust admits that, at sentencing, the court

provided its reasons as to why it departed from the sentencing guidelines. *See* Appellant's Brief, at 21-22 (describing, through record citations, that the court indicated that the sentencing guidelines failed to take into consideration: 1) the number of victims; 2) the victims' relationship with Faust; 3) the damage done to this entire group of people; 4) Faust's lack of remorse; and 5) the extended period of time over which Faust performed these illicit acts); *see also* N.T. 11/15/18, at 40-41, 77, 96-97, 117-40, 145 (outlining the factors relied upon by the sentencing court when it exceeded the sentencing guidelines, including, but not limited to, consideration of the victims, Faust, and the general lack of mitigating circumstances). With this reasoning on the record, we cannot conclude that the imposition of outside-the-guidelines sentences indicates that the court was improperly biased against Faust.

Returning to the specific incidents highlighted by Faust as indicative of bias, Faust first takes issue with the court's use of the word "ongoing," N.T., 6/5/18, at 42, to describe Faust's conduct, which was uttered at his pre-sentence bail determination hearing. Contextually, we do not see how this demonstrates bias, as the court appears to have been merely referring to the fact that Faust's illicit conduct continued over a seventeen-year period. Moreover, as the statement was made during bail proceedings, we do not see how use of that word implies that the court was inherently biased and therefore guaranteed to sentence outside of the sentencing guidelines.

On the second purported occurrence, it is unclear how a passing

reference to Faust's funeral business as being "little" rises to the level of demonstrating partiality, prejudice, bias, or ill-will from the court or how such a statement even constitutes mockery. Likewise, as to his third alleged demonstration of bias, we find the court's use of the phrase "to all of us," N.T., 11/15/18, at 130, in reference to both the effects of his actions, which is accurate given Faust's negative impact on dozens of individuals, and guided by the court's perception of Faust demonstrating a lack of remorse. Contrary to Faust's declaration, we cannot conclude that such a phrase was specifically referential to the court itself.

The fourth averment, that his sentence ended up being the same length as the time he spent committing criminal acts, appears to be entirely speculative and, at most, coincidental. Without any objective evidence or precedent, Faust has failed to meet his burden in presenting even a colorable argument that the duration of his criminal actions somehow influenced the specific aggregation of his sentences, resulting in a comparable amount. Moreover, given the minimum and maximum nature of his sentence, Faust's singular fixation on the maximum sentence is misplaced.

Finally, we find that fleeting references made by the sentencing court to Faust, e.g., "Father Faust" and "most manipulative human," do not indicate a bias against Faust; rather, they indicate the court's impression of the facts to which Faust pled guilty. While, perhaps, it could have used different language on those occasions, there is no doubt that Faust admitted to defrauding not

only the Social Security Administration, but also fifty-five vulnerable customers over nearly two decades. ***See, e.g***, N.T., 6/5/18, at 9-10, 33-34. Further, the court itself had been misled by Faust. The court, upon Faust's representations that he was gathering assets to provide restitution to his victims, delayed sentencing. However, ultimately, the court "was informed that [Faust] had encumbered his business and personal assets beyond what [Faust] represented to counsel, the [court] and his family and that little or no equity was available with regard to those properties to compensate the victims." Trial Court Opinion, 7/29/2019, at 13. Despite this, it is clear the sentencing court crafted a highly individualized sentence, guided by, among other things, the dictates of our sentencing code and facts as pleaded to by Faust. As such, we discern no evidence of actual bias employed by the sentencing court and find no merit to Faust's argument.

Having found neither of Faust's issues to be meritorious, we affirm his judgments of sentence.

Judgments of sentence affirmed.

Judge Pellegrini joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/21