J-S26010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LASHANDA F. BULLOCK | : | |
| | : | |
| Appellant | : | No. 170 MDA 2024 |

Appeal from the Judgment of Sentence Entered September 26, 2023
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0001318-2022

BEFORE: PANELLA, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED: OCTOBER 21, 2024**

Lashanda F. Bullock appeals from the judgment of sentence entered in the Lycoming County Court of Common Pleas on September 26, 2023. On appeal, Bullock challenges the denial of her pre-trial motion to suppress, the sufficiency of the evidence, and the discretionary aspects of her sentence of incarceration. After careful review, we affirm.

The trial court previously summarized the factual history as follows:

> Officer Charles Schwab is a police officer who had been employed by the Williamsport Bureau of Police for approximately three years at the time of trial. He was the primary investigating officer in this case. Officer Michael Corter is a police officer who had been employed by the Williamsport Bureau of Police since 2015. He was partnered with Officer Schwab at the time of the incident at issue here. The officers were dispatched to 883 Park Avenue, Williamsport on October 2, 2022 for an animal abuse call. That property is adjacent to [Bullock]'s residence, and the complaining witness lived there.

The complaining witness reported to the officers that a cat was restrained by the neck on [Bullock]'s back porch and that she was concerned for its welfare. She stated that she had cut the cat loose once but that it was restrained again on a very short leash. The Officers were concerned for the animal's welfare based on the report, so they approached the porch in question. Officer Corter testified that when the officers arrived at [Bullock]'s back porch they found the porch to be in disarray and covered with garbage.

The Officers also observed a cat restrained by the neck in the corner of the porch. There was a litter box that was full but no food or water. The cat had labored breathing, was lethargic and appeared to be in distress, so they immediately attempted to cut it free. There was a 12- to 15-inch section of line that Officer Schwab attempted to cut. After cutting the line in one place, Officer Corter, attempted to pick the cat up but was unable to do so. In fact, he could not move the cat at all because the leash was so tight. The cat was getting very agitated and its breathing was labored because it seemed to be unable to get enough air. The officers soon discovered the line was knotted in another area so close to the cat's neck that the cat was physically prevented from lifting its head.

Believing they could not free the cat without injuring it or causing it further distress, the officers knocked on the door. [Bullock] came to the door, and she was ultimately able to free the cat with scissors. [Bullock] appeared to show little concern for her cat and was in no hurry to free it. She told police that it tied itself up. She took the cat in to the house, and the officers met her at the front door. She released the cat, and it immediately went to the neighbor's house for food and water. Because it was a weekend, the SPCA was not open, so they left the cat with the neighbor where it could be monitored until the SPCA got there.

The officers were not willing to leave the cat with [Bullock] because of the living conditions at her house—the filth, the full litter box and the lack of food and water—and because of the way that [Bullock] kept tying it by the neck. They were planning to take the cat to the SPCA, but the neighbor agreed to give the cat a bath and to keep it until the SPCA opened on the next day. Officer Corter testified that he was also concerned that [Bullock] said that the cat tied itself up and appeared not to be concerned about the cat's welfare.

After the day of the incident, Officer Schwab did not have any further contact with [Bullock] until her arraignment. After her arraignment, when she was being transported to the Lycoming County Prison, she was agitated and said, "when I get out I'm going to strangle another cat."

Bethany Reed is the foster coordinator at the Lycoming County SPCA. She is responsible for the general welfare, care and organization of the SPCA's foster program. She was responsible for the care of [Bullock]'s cat while it was at the SPCA. She testified, and provided photographic evidence, that the cat had hair loss and scarring around its neck, consistent with something being tied too tightly there. She had seen similar conditions when, for example, an animal had a collar that was too tight, but nothing nearly this bad. She is not a veterinarian, but was assisted by one when examining the cat.

Betsy Sparling is a humane officer and assistant kennel manager at the Lycoming County SPCA. She picked the cat up from [Bullock]'s neighbor and handed it off to her colleagues to be examined. Thereafter, she is responsible for working with the Police Department and coordinating the animal's temporary housing. She testified that room and board at the SPCA for a cat was fourteen dollars per day and that the SPCA was not able to rehouse the animal until it was released by [Bullock] because the SPCA did not own it.

Bullock testified on her own behalf. She testified that her cat's name was "Frisky" and that she gave him that name because he is wild. She testified that he must have gotten tangled up in the rope on his own while trying to get on to the porch. She testified that this sort of thing had happened previously. She asserted that she took good care of him. She claimed that the cat in the SPCA's custody was not her cat.

Opinion and Order, 1/26/24, at 2-5. Bullock was initially charged with Count 1—aggravated cruelty to animals, Count 2—cruelty to animals, and Count 3—neglect of animals. Prior to trial, the Commonwealth withdrew Count 1.

On July 18, 2023, Bullock appeared for a bench trial. Prior to the start of trial, the court addressed a motion to suppress filed by Bullock's counsel

the prior morning. The court dismissed the motion as untimely. Following a bench trial, the trial court found Bullock guilty of Counts 2 and 3. Sentencing was deferred for preparation of a presentence investigation report ("PSI").

On September 26, 2023, the trial court sentenced Bullock to 30 days to 2 years minus one day of incarceration for Count 2. For Count 3, the court imposed a sentence of guilty without further penalty. The court also directed Bullock to pay court costs and restitution to the SPCA, to undergo a mental health evaluation with recommendations to be incorporated into conditions of probation, to a ban on domestic pet ownership and to stay away from all domestic pets and to standard conditions of probation during the 2-year period of sentence. Bullock filed a post-sentence motion, asking the court to reconsider (1) the sentence of incarceration (2) the decision not to entertain Bullock's motion to suppress evidence, (3) the decision to impose restitution costs to the SPCA, and (4) the decision to find Bullock guilty of cruelty to animals. Following a hearing, the court entered an opinion and order denying the motion. This timely appeal followed.

Bullock raises the following issues on appeal:

I. Did the trial court err[] by dismissing [Bullock]'s motion to suppress as untimely and refusing to address the motion on its merits?

II. Did the Commonwealth present insufficient evidence of all the elements of the charged offense, such that [Bullock] could be proven guilty of cruelty to animals, a misdemeanor in the second degree, beyond a reasonable doubt?

- 4 -

III. Did the trial court abuse its discretion by imposing an excessive and unreasonable incarceration sentence upon [Bullock] considering the factors set forth in 42 Pa. C.S. §9781(c)(3) and the totality of circumstances?

Appellant's Brief, at 8.

In her first issue, Bullock contends the court erred by dismissing her pre-trial motion to suppress evidence as untimely. It is undisputed that Bullock did not timely file her suppression motion pursuant to Pa.R.Crim.P. 579(A), which provides:

Except as otherwise provided in these rules, the omnibus pretrial motion for relief shall be filed and served within 30 days after arraignment, unless opportunity therefor did not exist, or the defendant or defense attorney, or the attorney for the Commonwealth, was not aware of the grounds for the motion, or unless the time for filing has been extended by the court for cause shown.

Pa.R.Crim.P. 579(A).

Here, the criminal complaint against Bullock was filed on October 2, 2022. On October 4, 2022, Bullock filed an application for appointment of counsel. On October 11, 2022, Bullock waived her preliminary hearing. Counsel entered their appearance on October 14, 2022. On October 20, 2022, Bullock, through counsel, waived her formal arraignment which was scheduled for October 24, 2022. On November 4, 2022, the Commonwealth served discovery on Bullock. Bullock did not file her motion to suppress until eight months later on July 17, 2023, the day prior to trial. Bullock acknowledges that her motion was untimely and does not argue that any of the reasons listed in Rule 579(A) for excusing untimeliness are applicable to the late filing

of her motion. Instead, Bullock argues the trial court should have considered her untimely filed motion to suppress in the "interests of justice." Appellant's Brief, at 23.

Pursuant to Pa.R.Crim.P. 581(B):

Unless the opportunity did not previously exist, or the interests of justice otherwise require, such [motion to suppress] shall be made only after a case has been returned to court and shall be contained in the omnibus pretrial motion set forth in Rule 578. If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived.

Pa.R.Crim.P. 581(B). The Comment to Rule 581 reiterates that the "failure to file the motion within the appropriate time limit constitutes a waiver of the right to suppress." Pa.R.Crim.P. 581, Cmt.

Bullock argues the interests of justice require review of her suppression motion on the merits. In the first place, we do not read Bullock's presentation of this issue in her 1925(b) concise statement as challenging the court's determination that her suppression motion was untimely. While she does state that the court found the motion untimely, her actual complaint is a challenge to the denial of her suppression motion based on the merits of the suppression claim. As a result, Bullock's claim that the trial court abused its discretion by not finding that the "interests of justice" required it to consider her suppression motion timely could be waived for this reason alone. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998).

Further, we find this issue is undeveloped. Bullock spends a majority of her argument section on this issue arguing the merits of the underlying

- 6 -

suppression issue. As the court denied the motion to suppress on procedural grounds, a discussion of the court's determination on timeliness should have been at the forefront of this discussion. While Bullock devotes over 8 pages to the merits of her suppression issue, she only devotes just over 1 page to the timeliness issue. Making matters worse, this brief section only includes one citation to authority. Bullock does not even cite to the applicable rules above from which "the interests of justice" reference is delineated.

Even if this issue were not waived, we would find that it does not afford her any basis for relief. Bullock's suppression motion was filed eight months after the deadline provided for by Rule 579(A). Bullock had ample time to file her motion and offered no explanation for failing to do so, much less one that fits within the exceptions delineated by Rule 579(A). Given these circumstances, we see no error on the part of the trial court in ruling that Bullock's motion to suppress was untimely.

We are simply not persuaded by Bullock's assertion that the "interests of justice" required the court to reach a contrary conclusion. Bullock argues her motion should have been considered in the interests of justice because it is of arguable merit, the issue presented is not complex, and only 2 witnesses were required. Finally, Bullock asserts, without any explanation, that no defense counsel was able to see her home until July 14, 2023, days prior to trial.

While the term "interests of justice" is necessarily vague and undefined by rule or caselaw, it functions as a catch-all for unforeseen situations where the court is convinced that justice will not be served by strict application of the rule.

Here, the suppression court was not convinced that justice would be served by allowing the untimely motion to suppress. Given the dearth of evidence or argument provided by Bullock about why the motion was filed so late, we cannot discern any abuse of the trial court's discretion. Accordingly, Bullock's first issue is waived and otherwise without merit.

In her next issue, Bullock challenges the sufficiency of the evidence supporting her conviction for cruelty to animals. We are constrained to find this issue waived as well.

It is well-established that any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review. *See Lord*, 719 A.2d at 309. Further, an appellant's concise statement must identify the errors with sufficient specificity for the trial court to identify and address the issues the appellant wishes to raise on appeal. *See* Pa.R.A.P. 1925(b)(4)(ii) (requiring a Rule 1925(b) statement to "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge"). A Rule 1925(b) concise statement that is too vague can result in waiver of issues on appeal. *See Commonwealth v. Dowling*, 778 A.2d 683, 686-87 (Pa. Super. 2001) ("a [c]oncise [s]tatement which is too vague to

allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all").

> If [an appellant] wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. [Where a] 1925(b) statement [ ] does not specify the allegedly unproven elements[,] ... the sufficiency issue is waived [on appeal].

*Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa. Super. 2015) (citation omitted). Further, waiver applies even where the trial court addresses the issue in its Rule 1925(a) opinion and where the Commonwealth does not object to the defective Rule 1925(b) statement. *See Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008) ("The Commonwealth's failure and the presence of a trial court opinion are of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim.") (citations omitted).

Here, Bullock purports to raise a sufficiency claim in her Rule 1925(b) statement. However, the statement fails to "specify the element or elements upon which the evidence was insufficient" to support Bullock's conviction. Rather, the issue is presented in a rambling fashion, mainly including numerous complaints against Bullock's neighbor, the complainant. *See* 1925(b) Concise Statement at 1-2 (claiming the evidence was insufficient for numerous reasons including that the complaining neighbor had been coming

onto Bullock's property without permission; had been feeding Bullock's cat without Bullock's knowledge; had offered to care for the cat over the weekend and agreed to take the cat to the SPCA; had handed a cat that may not be Bullock's cat to the SPCA, etc.). We are unable to determine how any of these complaints constitute an element or elements of the crime of cruelty to animals. As a result, we must conclude Bullock's sufficiency of the evidence claim is waived. *See Williams*, 959 A.2d at 1257-58.

In her third and final issue, Bullock argues the trial court abused its discretion by imposing an excessive and unreasonable sentence of incarceration. Bullock concedes this claim raises a challenge to the discretionary aspects of her sentence. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted).

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted; brackets in original).

- 10 -

Here, Bullock preserved her issue through a timely post-sentence motion and filed a timely appeal. Further, counsel has included the required Rule 2119(f) statement.

We therefore must review the Rule 2119(f) statement to determine if Bullock has raised a substantial question. *See Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005). "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Id*. (citation and emphases omitted); *see also* Pa.R.A.P. 2119(f).

Bullock "must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." *McAfee*, 849 A.2d at 274 (citation omitted). That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Tirado*, 870 A.2d at 365 (citation omitted). "Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa. Super. 2012) (citation omitted).

In her 2119(f) statement, Bullock "avers that the trial court's sentence is manifestly excessive in light of the circumstances of the offenses, no harm to the animal, and her lack of prior record and family situation." Appellant's Brief, at 13. Further, Bullock argues she already received credit for nine days'

incarceration and that a sentence of incarceration for this offense "does not serve any sentencing consideration under the Sentencing Code." *Id*.

"[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." ***Commonwealth v. Cannon***, 954 A.2d 1222, 1229 (Pa. Super. 2008) (citation omitted). We point out that Bullock does not allege the trial court was unaware of these factors.

However, while a bald claim of excessiveness does not present a substantial question for review, a claim that the sentence is manifestly excessive, inflicting too severe a punishment, does present a substantial question. ***See Commonwealth v. Cartrette***, 83 A.3d 1030, 1038 (Pa. Super. 2013). In a somewhat generous reading, it appears Bullock avers the trial court sentenced her to an unnecessary term of imprisonment that resulted in an excessive sentence. Because Bullock arguably presents a claim that the sentence is manifestly excessive and too severe, we conclude Bullock has presented a substantial question, and we proceed with our analysis.

Preliminarily, we note the trial court reviewed a PSI prior to sentencing. Where the trial court had the benefit of reviewing a PSI, we must

> presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been

- 12 -

fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Commonwealth v. Hallock*, 603 A.2d 612, 616 (Pa. Super. 1992) (citation omitted).

Additionally, at sentencing, the court considered the arguments of counsel and a brief statement by Bullock. Further, the court acknowledged that it considered the guidelines, and found a number of factors justified an aggravated range sentence. *See* N.T., Sentencing Hearing, 9/26/23, at 11. The court justified its sentence as follows:

> In considering the case, the [c]ourt finds that there are a number of factors that could justify a sentence in the aggravated range of the sentencing guidelines. [Bullock] was on probation supervision at the time of this offense.

> And we have more than simply a failure to accept responsibility; although, clearly, we have that. [Bullock] has clearly failed to accept responsibility in the face of overwhelming evidence.

> [Bullock] would have lied to the police on the date of the offense claiming that the cat tied itself up which would have required the cat to not only tie a rope around its own neck but then tie that same rope at three different places in knots along the lattice and railing of the deck, which is ridiculous to think that a cat would be or any animal would be able to do that. Clearly, this cat was tied by a person.

> [] Bullock continued with her lies when she testified falsely at trial. And while this [c]ourt accepts that every Defendant has the right to their day in court, they do not have a right to commit

- 13 -

perjury in their own defense. And [Bullock] has continued to tell the same tale to Adult Probation in preparation of the presentence report.

The [c]ourt also finds that the facts underlying this and the cruelty to this animal are particularly heinous. There is no doubt that this cat would have died had the police not rescued it when they did.

The [c]ourt finds that a sentence in the aggravated range is not only justified for all of those reasons, but a period of incarceration is clearly called for.

*Id*. at 11-12. Finally, in its opinion accompanying the order denying Bullock's

post-sentence motion, the trial court again justified its sentence as follows:

Ultimately, here, the court considered and balanced the possible collateral impact of a sentence of incarceration on [Bullock]'s school plans, housing and children against the aggravating factors found by the court and determined that a brief period of additional incarceration was warranted. The court considered the factors it was required to consider, and determined that the sentence imposed best ensured the protection of the public, the severity of the offense and the rehabilitative needs of [Bullock]. The court stated the reasons for its decision in open court and made them a part of the record. Under the circumstances of this case, the court considers the sentence to be reasonable and well within its discretion.

Opinion and Order, 1/26/24, at 2-5 (some capitalization omitted).

Under these circumstances, we cannot find that the trial court abused its discretion. The circumstances are certainly sufficient to justify the trial court's sentence. Therefore, Bullock's argument merits no relief.

As we find all of Bullock's issues are either waived or without merit, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/21/2024